SIDNEY T. FRUM, APPELLANT, V. GEORGE W. LEAMER,
APPELLEE.

FILED OCTOBER 13, 1917.   No. 20108.

Elections: CONTEST: EVIDENCE. In a proceeding under the Nebraska
statutes to contest an election on the statutory ground that
sufficient votes to change the result were illegally counted for con-
testee, contestant may introduce in evidence properly preserved
ballots themselves without first making proof of the charges in
his complaint, facts stating such statutory ground being alleged
in specific terms. Rev. St. 1913, secs. 2095, 2124.

APPEAL from the district court for Dakota county:
GUY T. GRAVES, JUDGE. *Reversed.*

*R. E. Evans* and *Sidney T. Frum,* for appellant.

*Fred H. Free* and *J. J. McCarthy, contra.*

ROSE, J.

This is a controversy between two rival candidates for
the office of county attorney of Dakota county to contest
the election held November 7, 1916. According to the
county canvassing board, contestee had a plurality of 13
votes, and he was declared elected. Contestant com-
plained that sufficient votes to change the result of the
election were illegally counted for contestee. The con-
test was commenced in the county court. There the bal-
lots cast in the voting precints were rejected as evidence
on the ground that no preliminary proof of error or mis-
take in the counting of the votes had first been adduced.
A dismissal of the contest followed. Contestant appealed
to the district court, with the same result for the same
reason. This is an appeal from the judgment of the dis-
trict court to review the ruling that the ballots are not
available as evidence in advance of proof of contestant's
charges.

The judicial opinions on the question presented are not
harmonious. Some courts in construing legislation have

held that, while the ballots themselves are the best evidence of the result of the election, contestant, to make them available, should first offer proof tending to show that his charges are true; there being no reason to question or to examine the official returns or the ballots in advance of such proof. *Quigley v. Phelps,* 74 Wash. 73, Ann. Cas. 1915A, 679; *In re Tarr,* 93 Ohio St. 199. There is reason for this doctrine, where the legislature has left the courts free to prevent an examination of ballots and to terminate expensive or irritating litigation, unless there has first been proof of fraud or mistake affecting the result of the election. On the other hand, it has been held that, without any preliminary proof of fraud or mistake, the ballot boxes may be opened and the contents examined to sustain the charges of contestant. *People v. McClellan,* 191 N. Y. 341. In the cases cited, however, the statutes construed are not exactly like those under which contestant proceeded in the present case. It is therefore necessary to examine the Nebraska statutes and the issues presented by the pleadings.

An election contest may be instituted by the filing of a complaint "verified by the affidavit of the contestant that the causes set forth are true as he verily believes." Rev. St. 1913, sec. 2113. Contestant is required to file a bond "to pay all costs in case the election be confirmed, the complaint dismissed, or the prosecution fail." Rev. St. 1913, sec. 2113. The trial court has power to make any necessary "order concerning immediate costs." Rev. St. 1913, sec. 2118. "The election of any person to any public office" may be contested, says the statute, "when illegal votes have been received or legal votes rejected at the polls sufficient to change the result," and "for any error in any board of canvassers in counting the votes, or in declaring the result of the election if the error would change the result." Rev. St. 1913, sec. 2095. Some of the statutory provisions follow:

"The proceedings shall be assimilated to those in an action, so far as practicable, but shall be under the con-

trol and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter. * * * It shall be governed by the rules of law and evidence applicable to the case." Rev. St. 1913, sec. 2118.

"If an inspection of the ballots or poll books of any election district in this state shall become necessary for the determination of any election contest before any court, the presiding judge thereof may by order, naming the district or districts, require the proper officer to procure the same from the county clerk, or other person in whose possession or custody the same may be, and such clerk or person shall deliver the same to said officer, who shall deliver them unopened to such presiding judge." Rev. St. 1913, sec. 2124.

"The presiding judge shall open and inspect the same in open court, in the presence of the parties or their attorneys, and immediately after such inspection shall again seal them in an envelope and return them by mail or otherwise to the office of the county clerk in which they were at first required to be filed." Rev. St. 1913, sec. 2125.

The statute enumerates a number of grounds of contest, among them being ineligibility, conviction of a felony, and offer to bribe an elector. In a contest on these grounds alone an inspection of the ballots is unnecessary. The complaint is based on other grounds. It is alleged that there are eight precincts in Dakota county, and that in each votes sufficient to change the result of the election were illegally counted for contestee; the allegations in regard to Omadi precinct being as follows:

"That in said Omadi precinct the return of the election board of said precinct, and the official canvass thereof, shows that, out of 280 votes cast in said precinct for the office of county attorney, this contestant received 156 votes and the contestee received 124 votes. This contestant alleges and states that in said Omadi precinct contestant received 190 votes and contestee received not

to exceed 90 votes, and that the said votes in said precinct were irregularly, incorrectly and wrongfully counted and returned by the election board of said precinct, and were wrongfully canvassed by said canvassing board, and had the votes in said precinct been correctly counted, this contestant would have received, and did receive, not less than 190 votes for the office of county attorney in said precinct.

"That in said Omadi precinct in said county, at said general election, 14 ballots were cast by persons whose names are to this contestant unknown, on which said ballots no person was voted for, for the office of county attorney of said county, which ballots were illegally counted by said election board of said precinct for contestee, canvassed for the contestee by the said canvassing board of said county; that at least 34 ballots and votes cast for the contestant for the office of county attorney were illegally and incorrectly counted for the said contestee, George W. Leamer, and were canvassed for him by the said canvassing board of said county, and said 34 ballots so cast and voted for this contestant, or any of them, were not counted for this contestant by the said election board, and were not canvassed for said contestant by the said canvassing board, but said ballots were counted and canvassed for said incumbent."

The truth of these allegations was put in issue by the answer. After it was shown that the ballots cast in Omadi precinct had been preserved by the proper officers in the condition in which they were received by the election officers from the voters, and after the county clerk had produced in court the ballots from this precinct, they were offered in evidence and rejected. Was the ruling erroneous?

It will be observed that specific facts constituting a ground for a contest under the statute are confined to a specified election district. A correct count of the ballots would determine the issue without other proof. The statute seems to contemplate the taking of such a course.

Without requiring a contestant to conform to the Code of Civil Procedure, he is authorized to begin a contest by filing a complaint verified by an affidavit that the causes set forth are true as he verily believes. To prevent captious or meddlesome contests and to protect contestee and the public, contestant is required to file a cost bond. In addition, the court is authorized to make any necessary "order concerning immediate costs." The proceedings are under the control and direction of the court. As already stated, some of the statutory grounds do not require an inspection of the ballots, but if, in the language of the statute, an inspection of the ballots of an "election district" becomes "necessary for the determination" of the contest, the presiding judge may demand their production, and, when produced, he is required to open and inspect them in the presence of the parties and their attorneys. The legislature did not require preliminary proof of error or mistake as a condition of scrutinizing the ballots. An implied restriction that properly preserved ballots themselves cannot be examined, in the first instance, to prove a mistake does not seem to be consistent with the statutory procedure outlined. The public is interested in the election, in a correct count, and in the result. The force of the arguments on the sacredness of the ballot, on the integrity of the official returns, on the correct rules of evidence, and on the invoking of the power of the court to discover evidence is fully recognized, but the aim and import of the statute, as shown by the language of the lawmakers, are controlling considerations. The better construction permits the inspection of properly preserved ballots to support a charge of fraud or mistake in a specified election district, changing the result of the election, where that issue is raised by specific allegations stating a ground of contest, though preliminary proof in support of the complaint has not been first adduced.

For error in excluding the ballots, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.