## LOONEY v. COUNTY ELECTION BOARD OF SEMINOLE COUNTY et al.

No. 21575. Opinion Filed Sept. 9, 1930.

Crockett, Clarence J. Mull, A. M. Fowler, Lester E. Smith, J. M. Huser, C. M. Threadgill, Ira J. Banta, E. J. Sutherland, B. M. Salmon, James A. Pipkin, A. E. Archibald, J. E. Lester, T. H. Lester, G. R. Stirman, T. B. Pickens, J. P. Farnsworth, C. O. Lucas, James W. Rodgers, Binas Hostettler, Hugh M. Sandlin, Dudley B. Buell, Jno. E. Turner, J. B. Campbell, J. Ralph Knight, Hugh A. White, J. S. Meyer, W. L. McFall, W. M. Haulsee, R. L. Busey, W. L. Kleinwachter, Chas. N. Hamilton, Ethel Hamilton, Ralph P. Welch, and J. R. Huggins, amici curiae.

ANDREWS, J. On Tuesday, July 29, 1930, there was held in Seminole county, Okla., a primary election at which the name of Joseph C. Looney, petitioner herein, who will be hereinafter referred to as petitioner, and the name of George C. Crump, intervener herein, who will be hereinafter referred to as contestant, appeared upon the primary ballots as candidates for nomination as district judge of the Ninth Judicial District of the Democratic party.

At the election so held, as evidenced by the tabulation by the county election board of Seminole county from the several precincts of said county, the petitioner received a majority of 282 votes over the contestant.

At an election so held, as evidenced by the tabulation of the county election board of Hughes county from the several precincts of said county, the contestant received a majority of 266 votes over the petitioner.

Those two counties comprise the Ninth Judicial District of Oklahoma, and the result of the tabulation of the votes in the two counties was to show the petitioner to have been nominated for the office.

Within the time prescribed by law the contestant filed verified petitions with the county election boards of Seminole and Hughes counties, seeking to have a recount of the ballots cast at said election in certain precincts designated in said petitions.

Pursuant to the petitions filed, the county election boards set the hearing thereof for 9:00 o'clock a. m. on August 4, 1930.

Fred P. Branson, V. R. Biggers, C. Guy Cutlip, T. J. Horsley, and Irvin L. Wilson, for petitioner.

Thos. H. Owens, B. B. Blakeney, and A. S. Wells, for intervener.

C. Dale Wolfe, W. W. Pryor, G. O. Wallace, E. L. Ewing, W. A. Billingslea, John M. Stanley, E. W. Whitney, A. A. Criswell, Spencer Norvell, Lynn Adams, S. W. Biggers, W. A. Bishop, E. B. Short, Joe B.

The petitioner served notice upon the county election boards and the members thereof that he would apply to this court for a writ of prohibition, and pursuant thereto, at 9:30 o'clock a. m. on August 4, 1930, petitioner filed in this court his petitions for writ of prohibition, in which he prayed that the county election boards of Seminole county and Hughes county and the members thereof be prohibited from proceeding fur-

ther. The hearing was immediately had, at which the petitioner and the contestant appeared by their attorneys, and at about 12:30 o'clock on that date, this court issued its alternative writ of prohibition commanding the county election boards to refrain from further proceedings, pending the order of this court. Thereafter, the county election boards and the members thereof filed their response, the contestant filed his response, and the parties hereto filed their briefs. From the record, the briefs of the parties, and the brief amici curiae, it appears that the contestant contends that the county election board may declare certain votes cast at the election to be illegal; that it may determine for whom the illegal votes were cast; that it may, without a hearing of any kind, proceed to recount the ballots from the precincts questioned in his petitions, and that it may correct errors and irregularities in the official count and returns by striking out the alleged illegal votes, and otherwise.

The petitioner denies the right of the county election board to do any of those things and contends that before the ballots may be recounted there must be a showing by the evidence sufficient to overcome the presumption arising from the returns of the precinct election officers.

In our opinion, the issues presented are controlled by the provisions of chapter 241, Session Laws of 1929, otherwise known as the run-off primary law, and that a construction of that law will determine all of the contentions made herein. In order to understand the provisions of that act, it is necessary that we consider prior legislation and the decisions of this court construing the same.

This court, in the case of Shelton v. McMillan, Judge, 43 Okla. 483, 143 Pac. 196, had under consideration the authority of the county election board to recount ballots. The statute then under consideration was section 3038, R. L. 1910, which reads as follows:

"Any candidate in a primary election may challenge the correctness of the announced result thereof by filing with the county election board, whose duty it is to canvass the returns in such race, a verified statement setting forth a state of facts which, if true, would change the result in his favor; and thereupon it shall be the duty of such board to inspect and count the ballots questioned by such candidate within ten days after he has filed his affidavit. Such board shall, upon the conclusion of such recount, proceed to certify the result."

This court said:

"Section 3038 simply provides one of the links in the chain of procedure for carrying on the primary election, the ultimate purpose of which is to secure the party's choice of a nominee for the general election."

When that section is examined, together with the other provisions with reference to the primary election law, it will be found that the ballots, after having been placed in the ballot box, were to be counted by the precinct counters provided for, and that upon the making and filing of an affidavit in the form and manner and within the time provided, they were to be recounted by the county election board, in a proceeding to recount ballots, as a part of the election machinery provided for. The tabulation of the resut by the county election board was intended to supersede the tabulation made by the precinct counters. In other words, the tabulation of the result of the election was not complete until the county election board had recounted the ballots, if a recount was asked for in the manner and at the time provided by the act. If no recount was asked for in the manner and within the time provided by the act, the tabulation of the result of the election by the precinct counters was intended to be final.

Section 3038, supra, was again before this court for construction in Whitaker v. State ex rel. Pierce, 58 Okla. 672, 160 Pac. 890. In that case the facts showed that Whitaker lost on the face of the returns as made by the precinct officers. He asked for a recount under the provisions of section 3038, supra, and a recount was had. The result thereof was to show Whitaker to be the winner. After the recount Pierce brought an action to contest the right of Whitaker to the nomination, and Whitaker contended that under the laws of this state the action could not be maintained. This court held that the duties performed by the county election board in the recount under section 3038, supra, were ministerial in their nature and that the county election board was not vested with judicial power to inquire into and determine questions that were judicial in their nature, but was limited to a recount of the ballots upon their face.

The court further held that the returns by the precinct officials, until impeached, constituted prima facie evidence of the votes cast and of the results of the election, following Moss v. Hunt, 40 Okla. 20, 135 Pac. 282. The court said:

"The recount, showing a different result from that found upon a canvass of the re-

turns by the precinct officials, overcome the prima facie effect of those returns. and to impeach the results of the recount plaintiff introduced evidence to show that during the canvass of the precinct returns by the county election board, which occupied the time of the board from the 1st day of August until the 5th of that month, the board while in session during the daytime had said ballot boxes and returns in its possession, but at night left them in charge of a man named Ray, who was employed by the board to guard them, and after the canvass was completed they were left in a certain room, the doors and windows of which, with the exception of the front door, were nailed down, and the front door locked with two Yale locks. As between the ballots and the canvass thereof by the election officials, the ballots would ordinarily be the primary and controlling evidence, provided it be made to appear that they had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with. * * *

"The condition of these ballots when the boxes were opened by the county election board at the time of the recount shows beyond any question to our minds that they had been tampered with, and that a number of ballots cast by the voters had been destroyed and other ballots forged and substituted therefor, while others had been mutilated after reaching the custody of the county board. We have already seen that neither side contends that these matters happened until after the ballots and returns were in the hands of the county board, and the facts and circumstances in evidence are sufficient to thoroughly discredit the ballots as the best evidence of the result of the said election. It was proper to admit them in evidence for consideration in order to determine their identity and condition at the time of the recount. as compared with the condition they were in when delivered to the county election officials. These were questions of fact for the jury to determine, whether they were the identical ballots cast by the voters. and whether they were in the identical condition as cast, and to determine whether the greater weight should be given to the ballots or to the other evidence as to the result of the election. Moss v. Hunt, 47 Okla. 1, 145 Pac. 761. These issues were properly submitted to the jury, who found in favor of the plaintiff upon the facts, and their verdict was abundantly sustained by the evidence. * * *

"It is further urged that the court committed error in not permitting the defendant to show by certain voters how they voted in the primary. There was no error in rejecting this evidence. The object of the law in providing for a secret ballot is to secure the independence of the elector by requiring the exercise of his right of franchise in absolute secrecy, and free from solicitation and annoyance, and to preserve that secrecy after his ballot is cast, and the provisions of the statute upon this subject are mandatory in their character, and designed to prevent the corruption and abuses that were possible and sometimes prevailed in elections before the establishment of the present system. Board v. Dill, 26 Okla. 104, 110 Pac. 1107, 29 L. R. A. (N. S.) 1170, Ann. Cas. 1912 B, 101.

"That defendant could not compel them to testify is clear to our minds, and the fact, they they might have stated to other persons how they voted did not change the rule."

Under this holding the county election board was authorized to recount the ballots without a hearing of any kind or character. The question as to whether or not the ballots had been preserved in the manner and by the officers prescribed by the statute, and whether or not they were the identical ballots cast by the voters, and whether or not while in the said custody they had been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with, was left to the determination of the courts in an action in the nature of quo warranto.

It will be noted that the section under consideration (section 3038, R. L. 1910) did not provide for a hearing of any kind before the county election board. Clearly the duties of that board under that section were purely ministerial.

Section 3038, R. L. 1910, was carried forward without change and appears as section 6107, C. O. S. 1921.

In Brown v. Branson, 139 Okla. 271. 270 Pac. 63, a challenge to the correctness of the announced results of the primary election was filed with the secretary of the state election board. It could not have been filed under the provisions of section 6107, supra, for under those provisions it would have been filed with the county election board. It must have been filed, as held in that case, and as stated by the contestant therein, under the provisions of chapter 63, Session Laws of 1927.

This court therein held that section 6107, supra, was repealed by chapter 63, supra; that that act provided the only procedure for primary election contests, and that before a

recount could be had thereunder evidence must be offered that would reasonably overcome the prima facie presumption of correctness and fairness of the official return as defined in chapter 100, Session Laws 1927.

In discussing the case, the court said:

"Further, it will be noticed that section 3 of this act is practically identical with section 6107 except that it leaves out that part of section 6107 which provides that the contestant shall be entitled to a recount upon the filing of the affidavit or challenge as a matter of right. It appears that, in this revisory and substitute statute, if the Legislature intended to give a contestant the right to a recount upon the mere filing of a challenge, it would have said so, and by reason of having omitted the latter part of section 6107 above referred to, it expressly intended to change the rule heretofore in effect."

We think that that reasoning must be applied in construing the provisions of the Act of 1929, chapter 241. In that act almost the identical language of section 6107, supra, was used. We must conclude that that language was used for the purpose of restoring to the law that provision which this court in Brown v. Branson, supra, said had been repealed. A reason for its restoration is stated in Snowden v. Flanery (Ky.) 167 S. W. 893, as follows:

"So, where the only ground of contest is mistake or oversight in the counting and certifying of the votes, the defeated candidate must in a large measure rest his claim upon his naked allegation of such mistake and rely on the ballots for the evidence to sustain same.

"An election is the machinery whereby a self-governing people may express their opinions in concrete form upon matters of public concern, and select those to whom shall be intrusted the duty of administering the public affairs of the political body. If the people are to be self-governing, therefore, it is essential that an election shall accurately register the public will, for, if the officers chosen are not in point of fact the real choice of the people, then those who have produced that condition are masters, and the people are no longer self-governing. And, if by mistake of the election officers, one has been declared entitled to an office, when in fact such one is not the public choice, then the machinery of the government has failed in a most important particular.

"Ours is a government which rests upon the will of the governed; and, in such a government, it must be that there shall be no taint of suspicion attached to the machinery by which the will of the people is registered and expressed. And, in order that the people may have a confiding faith in the honesty of their elections, we think it proper that one who asserts that by mistake he has been deprived of an office to which the people have chosen him, and who is willing to bear the expense of the investigation, if he fail to make good such assertion, should have full and free access to the evidence of his success or defeat, as the case may be.

"It may be said that it is unfair to cast upon the candidate who by certificates of returns, which are presumptively correct, has been declared duly elected, the burden of defending himself against a contest proceeding based upon nothing more than a naked allegation of mistake in the count; but the integrity of the election machinery and the confidence of the people in the honesty of elections are matters of supreme importance, to which the individual must yield some measure of disadvantage and of duty.

"Upon a thorough and full consideration of the question, the court has reached the conclusion that a recount may be had upon the naked allegation of mistake in the counting and certifying of the vote; and, in a large measure, we have been aided in reaching this determination by the fact that we believe a most salutary influence will be exercised in favor of the honesty of elections and in the prevention of election frauds by the promulgation of the ruling herein announced.

"The trend of the best modern thought is along the lines of establishing beyond cavil the absolute fairness and honesty of the elections whereby is indicated the will of that large percentage of the people of the commonwealth who do not actively participate in the operation of the election machinery further than the casting of the individual vote, to the end that the people shall have an abiding and confiding faith in the integrity of their elections, respect for the officers chosen at those elections, and show willing obedience to the law as administered by them."

This court has repeatedly held that where a statute is taken from another state, which had been previously construed by the highest court of that state, the statute is deemed to have been adopted with the construction so given. Braden v. Gulf Coast Lumber Co., 89 Okla. 215, 215 Pac. 202; Byrd v. State, 99 Okla. 165, 226 Pac. 362.

This court will give the same construction to a statute enacted by the Legislature of this state that had previously been in effect in this state and that had been construed by this court while in effect herein.

The pertinent portions of the 1929 Act are as follows:

"Section 6. Any candidate in a general primary election may challenge the correctness of the announced and posted results thereof by filing with the county election board, whose duty it is to canvass the elec-

tion returns of and in said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations, if true, will show that the petitioner had received a majority of all votes cast for said nomination, or show that no candidate had received such a majority, and that the petitioner had received either the highest or the next highest vote cast for said nomination. * * *

"Upon the filing of such a petition, it shall be the duty of said board, if a recount is prayed for, to inspect and count the ballots questioned, or if an investigation of any alleged error or alteration in the tabulation of said returns is prayed for, to investigate the same and if an error or alteration has been made, to correct said returns."

Paraphrasing the language of Brown v. Branson, supra, it appears that in this revisory and substitute statute (chapter 241, S. L. 1929) the Legislature intended to give a contestant the right to a recount upon the mere filing of a proper petition. By reason of having restored in substance the latter part of section 6107, supra, it intended to restore that rule with the construction that had been given to it while that section was in effect.

There is, however, a material distinction between the 1929 Act and section 6107, Id. Section 6107, Id., provided for no hearing by the county election board, but provided for a recount by the county election board as a ministerial duty and left to the courts the determination of all judicial questions involving the result of the election. The Act of 1929 provides a complete procedure for primary election contests and, following the rule announced in the case of Brown v. Branson, supra, the procedure therein provided is exclusive and the only procedure for challenging the results of a primary election.

There is another distinction between section 6107, Id., and the 1929 Act. The 1929 Act provides for a hearing of some sort. The secretary of the county election board is authorized to issue subpoenas for witnesses and the sheriff and his salaried deputies to serve the same. No continuance shall be granted for any purpose and no appeal shall be taken therefrom.

The contestant contends that no hearing is necessary. He is in error. The act can be given no such construction. To do so would be to defeat the intent and language of the statute, section 3 of which provides:

"At 6 o'clock p. m., on the second day after said posting, said board shall certify to the State Election Board as official the vote in said county for all state offices and all offices for which the electors of more than one county are entitled to vote, in which a candidate has not filed such a petition. (A petition under the provisions of section 6 of the act.) If such a petition is filed by a candidate for such an office within said time, it shall be the duty of the county election board to have a hearing thereon as is provided in section 6 of this act. At the conclusion of said hearing said board shall immediately certify the result thereof to the State Election Board by registered mail, which returns shall be final and official."

What, then, is the nature and purpose of that hearing? It is limited by the terms of the act to an investigation of alleged errors in the tabulation of the returns and to alleged alterations in the tabulation of said returns. It necessarily follows that there must be an investigation and determination of whether or not the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with" before there can be a recount of the ballots. Formerly that question was left to the determination of the courts, but since the Act of 1929 provides a complete procedure for primary election contests, this court must hold that that question must be determined by the county election board as a part of the hearing held prior to a recount of the ballots.

In making that determination, section 6104, C. O. S. 1921, providing that the ballots shall be counted and returns thereof made in a primary election as by law provided for general elections, and section 6155, C. O. S. 1921, providing the method of making returns of the election, should be observed. The latter section provides, in part, as follows:

"When the ballots are tied and the knot is sealed, the bundle of voted ballots and the stub ballot book, with all the unused ballots attached to their stubs with the original certificate of the result in the back thereof, and the two tally sheets shall be placed in the envelope labeled 'Voted Ballots,' 'Tally Sheets' and 'Stub Book of Ballots,' this envelope shall not be opened except upon order of the Supreme Court or district court or a judge thereof in case of contest or some legal proceeding necessitating the opening of the same. The two duplicate copies of such certificate shall be placed in the envelope labeled 'Returns.' The several envelopes shall then be sealed by moistening the gummed flaps and pressing them down firm-

ly, then a seal of sealing wax shall then be placed upon such gummed flaps, so that the wax will extend well over on the body of the back of such envelope and should be made to cover a space as large as a silver half-dollar. In the center of the wax, while it is yet hot and soft, shall be firmly imprinted the precinct election seal. The duties above described shall be performed by the official counters. The clerk and judge shall then write their names across the gummed flaps of each envelope extending them on to the body of the envelope, one upon the one side of such wax seal, and one upon the other. The several envelopes shall be placed in the ballot box by the inspector in the presence of the other members of the board and the counters and securely locked. After the ballot box is securely locked the inspector shall not again open it, but shall deliver it in that condition to the secretary of the county election board."

The procedure provided by the 1929 Act is a "legal proceeding necessitating the opening of the same," and these sections provide the rule which must govern the county election board in making its determination that the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with."

This court, in Harris v. Boggess, 124 Okla. 251, 255 Pac. 685, had before it the question of where the burden of proof rested as to the ballots not having been tampered with, and following the rule in Newhouse v. Alexander, 27 Okla. 46, 110 Pac. 1121, held:

"Before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots have not been tampered with since the election, and that those offered in evidence are the identical ones cast."

In Logan v. Young, 121 Okla. 203, 249 Pac. 369, the court restated the rule of prima facie evidence as to the correctness of the precinct returns and the rule as to the burden of proof of the condition of the ballots.

In Murray v. McGehee, 121 Okla. 248, 249 Pac. 700, the returns of the precinct election officers were held to be prima facie evidence of the voters.

In Gay, Sheriff, v. Johnston, 121 Okla. 298, 249 Pac. 943, there was a recount of the ballots in court. The question of the condition of the ballots was left to a jury, and it was held that the precinct election re-

turns were prima facie evidence of the votes.

There is nothing in any of those cases contrary to the rule herein announced.

The county election board has only such authority as is given it by the Act of 1929. There is nothing therein that authorizes that board to determine the qualifications of the voters who voted at the election or how any voter voted at the election. Those questions are not within the jurisdiction of the county election board in such a proceeding.

Where, then, is the authority to correct such errors?

At common law there exists no right to contest in the courts the title to the nomination of a political party for public office, and none now exists, unless specially provided for by statute. Dabney v. Hooker, District Judge, 121 Okla. 193, 249 Pac. 381, and cases therein cited.

In Dabney v. Hooker, District Judge, supra, it was held that the statutory procedure for election contests theretofore existing was repealed by chapter 96, Session Laws of 1925, and that thereafter there was no statutory authority for contests for primary election in the district courts of Oklahoma. In announcing that decision this court called attention to the fact in clear and unambiguous language, and Mr. Justice Branson in a special concurring opinion called attention to the fact that the Legislature doubtless did not realize the far-reaching consequence of its act when it provided for the repeal of the prior primary election contest procedure.

It would seem that the language of this opinion was sufficiently clear to attract the attention of subsequent Legislatures and that had the rule announced in that case not met with the approval of subsequent Legislatures, it would have been corrected by the Legislature. No such correction has been made.

This court is a judicial and not a legislative body. It is not its purpose to provide legislation. It has called the attention of the Legislature to this condition and nothing has been done to correct the same.

We, therefore, hold that under the provisions of section 6, ch. 241, Session Laws of 1929, a contestant is given a right to a recount upon the mere filing of a petition in the manner and form and within the time therein specified.

However, the ballots that are to be recounted are the ballots that were cast at

the election and no other ballots. The election was held on election day and not at some later time. The recount must be of ballots as they were at the time of the election and not as they are at some later time. The county election board must therefore, before proceeding to the recount of any ballots, ascertain from evidence that the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with," and the burden of such showing is on the contestant. In the absence of such a showing the prima facie case made by the returns of the precinct election officers must prevail. To announce any other rule would be to give a contestant the benefit of any changes made in the ballots after they were counted by the precinct counters and would be to create an inducement for the fraudulent alteration of the ballots cast at any primary election.

The next question that presents itself is What is to be recounted? The statute reads, "the ballots questioned." Contestant contends that this language includes all of the ballots in all of the ballot boxes that are questioned in the petition of contestant. The petitioner contends that it includes only those ballots that were questioned either at the time they were cast or at the time they were considered by the precinct counters. We think that the language was intended to include the ballots questioned by the contestant in his verified petition. It is our opinion that the power thus conferred upon the county election board is similar to the power given to the precinct counters and that the county election board is authorized to recount all of the ballots cast at the election that are questioned by the contestant in his verified petition.

It is contended that to permit a recount of all ballots questioned by a contestant in his petition would require such time as to defeat the working of the run-off primary law. That is a contention unsupported by evidence and may or may not be true. Under the facts shown in this case, it does not appear to be true. We will determine the effect of that contention when supported by evidence tending to show that sufficient time is not given under the law for a recount of the ballots.

It is contended that contestant's petition is not sufficiently definite and certain. We

quote from the petition the allegations made as to one precinct, as follows:

'Fourth. Your petitioner alleges that in Brown township, precinct No. 1, the official counters in said precinct counted and tabulated 342 votes for the contestee and 248 for the contestant. He alleges that this counting and tabulation was erroneously made in that they counted and tabulated for the contestee 35 votes that were cast for this contestant and which should have been counted and tabulated for this contestant, and if said votes cast in said precinct were correctly counted and tabulated the announced result would be so changed as to entitle this petitioner to a certificate of nomination in favor of this petitioner, when taken in conjunction with the votes cast in Hughes county.

"Fifth. Your petitioner alleges that in the aforesaid precinct the official counters counted and tabulated for the contestee 26 ballots that he was not entitled to receive, for the reason that the same were illegal and void, because of being mutilated, and that if the said ballots were by this board declared mutilated and deducted from the face of the returns of said precinct, it would change the announced results in favor of this petitioner when taken in conjunction with other errors herein alleged, and together with the votes cast in Hughes county.

"Sixth. Your petitioner alleges that since the official counters made the error as aforesaid on the tally sheet, and transferred the same to the returns, there is an error on the returns giving the contestee 26 votes which were actually cast for this contestant, and the same should be corrected to speak the truth.

"Seventh. Your petitioner alleges that due to the fact that the official counters counted and tabulated for the contestee 35 votes which were actually cast for this contestant there is an error on the tally sheet of 35 votes which should be corrected.

"Eighth. Your petitioner alleges that since the official counters made the error as aforesaid on the tally sheet, and transferred the same to the returns, there is an error on the returns, giving the contestee 35 votes which were actually cast for this contestant, and the same should be corrected to speak the truth."

Similar allegations were made as to each of the precincts questioned. In addition thereto there were allegations as follows:

"Thirty. Your petitioner alleges that in the said Econtuchka township precinct No. 4, there were gross irregularities and fraud practiced in this, to wit:

"That there were 45 illegal votes cast for the contestee, which votes were counted and tabulated for him, and your petitioner says

that a great many more than 45 illegal votes were cast, the exact number of which he has been unable to determine. He says that the 45 illegal votes were cast as the direct result of a conspiracy to defraud this contestant and in the following manner: That prior to the election a registration book was left in the hands of one Boots Cutler, operator of a dance hall, in what is known as 'North Town,' or 'Bishop's Alley.' That the said Boots Cutler was instructed to, and did, register 45 or more of the young men and women who frequent his dance hall, but who are transients, and most of whom are minors, none of whom were legal voters. That the said Boots Cutler did not deliver to such persons any registration certificates; that on the election day in furtherance of said conspiracy to defraud this petitioner one Ewell Short had said registration certificates in his possession and during the day sought out these persons to ascertain how they were going to vote in the district judge's race, and in instances where he was able to induce the illegal voter to vote for the contestee he delivered a registration certificate, with instructions to them to go to the aforesaid precinct and cast their vote for the contestee; that he delivered 45 or more of such false, spurious and illegal registration certificates to sundry persons, the names of whom are unknown to this contestant, but who did go to the said precinct and cast a ballot for the contestee. That said illegal ballots were counted and tabulated for the contestee.

"Thirty-One. He alleges that there were other illegal votes cast in said precinct as follows: Virgil Young, registered a Republican, and his wife, who is not registered, cast their votes in said precinct for the contestee; that two boys, one 15 years of age and the other 16 years of age, cast their votes in said precinct for the contestee; that Edna Pinkston, who lives at the Franks Hotel, and another woman whose name is unknown to your petitioner, were taken by the said Ewell Short to precinct No. 12, at the school building in Seminole, and there were denied a vote, after which the said Ewell Short took them to this precinct and there had them tended voters lived in [sic.] or were entitled to vote in Econtuchka township, precinct No. 4.

"Your petitioner further alleges that Zula Caruthers, age 19 years, Lucile Caruthers, age 16 years, Ruth Drennan, age 19 years, and Mrs. Craig Giles, age 17 years, voted in said precinct for the contestee, and that their votes were illegal and void, and that they were counted and tabulated for the contestee.

"Petitioner further says that there were so many illegal votes cast in said precinct for the contestee that it is impossible for the legal and illegal votes, because of being intermingled, to be separated and the legal and illegal votes determined and the actual results in said precinct declared. That by reason thereof your petitioner says that the entire box is so filled with illegal votes, and so tainted with fraud that the same should be by this board thrown out and the entire vote disregarded in so far as it affects the contestant and contestee."

In our opinion the petition is definite and certain and conforms to the requirements of the 1929 Act.

The contestant, in his brief, makes much of what he says is shown by a partial recount made in Hughes county while this proceeding in this court was pending, after the alternative writ herein was issued and after his attorneys knew of the issuance thereof. We can give no consideration to such contention for the reason that there was no showing made that the ballots recounted were the ballots cast at the election. As we have heretofore said, until such a showing is made there can be no recount, and a recount without such a showing furnishes nothing to overcome the presumption that the precinct election officials performed their duty and returned to the county election board a true and correct statement of the result of the tabulation of the ballots cast at the election.

The petition of the contestant, in addition to the other allegations made with reference to Canadian precinct, alleged that the returns of the election held in that precinct were not delivered to the county election board until after noon on the day following the election. The act provides that the returns shall be delivered "before noon" of that day. The penalty for failure to perform that duty is fixed by the act and applies only to the election officials. There is nothing in the act providing that the failure of the election officials to perform their duties in whole or in part will void the election.

This court in Lamb v. Palmer, 79 Okla. 68, 191 Pac. 184, held:

"The general rule is, where the statutes do not in express terms declare an election void for violation of certain statutory provisions, the election will be sustained, and the violation of the statute will be treated as an irregularity going to the form instead of to the substance, where, from all the facts, the court concludes that, in spite of the departure from statutory requirements, a full and fair ballot has been cast and a true and fair return of the entire election has been canvassed and made."

Under our system of government every elector entitled to cast his ballot stands up-

on a complete political equality with every other elector entitled to cast his ballot, and every such elector has the right not only to cast his ballot but to have his ballot counted and certified to the end that his choice for elective public officials may be registered. The fact that other electors violate the law or that the election officials improperly perform or negligently fail to perform their duties or perform them in an illegal manner does not defeat the right of a qualified elector to cast his ballot and to have his ballot counted and certified. To permit such would be to defeat the rights of qualified electors by the acts of individuals over which they have no control.

The returns from Canadian precinct, having been received by the county election board and tabulated, must be considered as the returns from Canadian precinct, notwithstanding the fact that they were not delivered within the time provided by the act, and the county election board is not authorized to reject the returns from that precinct merely because they were not received within the time provided by the act for the delivery thereof.

It is contended that because the petitioner also asked for a recount of the ballots in certain precincts, he is estopped to deny the right of the contestant to a recount of the ballots in the precincts requested by him.

We think that both the petitioner and the contestant are entitled to a recount of the ballots in the precincts requested by each, but that neither of them is entitled to a recount until the showing has been made as hereinbefore determined. The actions of neither of the parties to this contest can give the county election board authority that it does not otherwise have.

In Dabney v. Hooker, supra, this court, following the general rule, said:

"Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law or is attempting to make an unauthorized application of judicial force."

In determining whether the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with," whether there has been an error in the tabulation of the returns or whether there has been altera-

tion of the tabulation of the returns, the county election board acts in a judicial capacity. In that capacity it is subject to the supervision of this court under the provisions of section 2, art. 7, of the Constitution of Oklahoma. If the county election board attempts to determine whether the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with," without a hearing on those questions, it assumes to act in contravention of and in excess of its authority, and its action is an unauthorized application of judicial force.

The record in this case shows that the county election board of Seminole county and the members thereof are attempting to and will, unless prohibited by this court, proceed to count the ballots in the precinct boxes designated by the contestant without any hearing as hereinabove determined. They should be prohibited from so doing.

It further appears from the record that the county election board of Seminole county and the members thereof are attempting to and will, unless prohibited by this court, determine that certain ballots cast at said election were cast by persons not authorized to vote, and determine how such persons voted. Their actions in those respects are without authority of law and should be prohibited by this court.

The action of the county election board and the members thereof in proceeding to recount ballots, after a proper showing therefor has been made, is ministerial in its nature. Its action in so doing will not be controlled by this court.

"The writ of prohibition will not lie to an executive or ministerial board to control or regulate it in the performance of a ministerial or executive function." State ex rel. Caldwell v. Vaughn, 33 Okla. 384, 125 Pac. 899.

The facts and circumstances shown by this record require that the temporary writ heretofore issued be made permanent in so far as it prohibits the county election board of Seminole county and the members thereof from proceeding to recount any ballots cast at the primary election held on July 29, 1930, until such time as it has been made to appear to that board by evidence that the ballots sought to be recounted "had been preserved in the manner and by the officers

prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with;" in so far as it prohibits them from determining the qualifications of the voters voting at said election, and in so far as it prohibits them from determining how any voter at said election voted; that said writ should in all other particulars be recalled and that a peremptory writ in accordance herewith should issue.

It is, therefore, ordered that the county election board of Seminole county, Okla., and each and all of the members thereof, be, and they are, prohibited from recounting any of the ballots cast at the primary election held in Seminole county on the 29th day of July, 1930, for the office of district judge until such time as it shall be made to appear to that board from evidence that the ballots sought to be recounted "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with; that they, and each of them, be, and they are, prohibited from determining the qualifications of any voter who voted at said election, and that they and each of them be, and they are, prohibited from determining how any voter voting at said election voted thereat.

It is further ordered that in all other particulars the petition for the writ of prohibition be, and it is, denied.

A writ is ordered to issue in accordance herewith.

LESTER, V. C. J., and RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.

MASON, C. J., absent. HUNT, J., disqualified. CLARK, J., dissents.

Note.—See "Elections," 20 C. J. §109, p. 111, n. 70; §122, p. 119, n. 98; § 124, p. 120, n. 19; §131, p. 123, n. 87; §134, p. 124, n. 22, 31. "Prohibition," 50 C. J. §52, p. 681, n. 57.