Smith, J. (dissenting):
The above is the opinion of the majority of the court. I find myself unable to agree with it. I choose to place my dissent on the ground that any person desiring to contest an election is entitled to have the votes recounted when he complies with R. S. 25-1415 by filing a statement of intention to contest and the bond provided for.
I think this is guaranteed by the provision set out heretofore in this opinion from R. S. 25-419. It is as follows:
“In all cases of contested elections, either of the parties contesting shall have the right to have such ballots opened and to have all errors of the judges in counting the ballots corrected by the court or body trying such contest."
A great deal has been said in this case about the fact that the purpose of this statute, commonly called Australian ballot law, was to secure secrecy of elections and to purify the use of the ballot by making it almost impossible for any person to tell how another person voted. I have read the section carefully. I am of the distinct opinion that the 'legislature desired to secure honest elections as well as to guarantee their secrecy. Of what use is a secret ballot if it is not counted correctly? And where the correctness of a count is challenged, how is any one to tell whether votes were counted correctly unless they are recounted? What harm could have ensued from a recount of the votes in the ninth precinct of the third ward? They could have been counted for this office in less time than it took the lawyers to prepare the contest papers. By the decision in this case we state to a contester what he must prove in order to sustain a contest, and then say that he cannot use the only possible evidence by which he can prove his case. The provisions of R. S. 25-419 must be read in connection with R. S. 25-1411 et seq. When this is done it becomes evident,.in my opinion, that the contest court is nothing but a board created for the purpose of recounting the ballots presented to it.
*947 This rule has been followed in other jurisdictions. In the case of Catron v. Craw, 164 111. 20, 46 N. E. 3, the supreme court of Illinois passed on a similar question. There the statute was as follows:
“ ‘In all cases of contested elections the parties contesting the same shall have the right to have said ballots- opened and to have all errors of the judges in counting or refusing to count any ballot corrected by the court or body trying such contest; but such ballots shall be opened only in open court, or in open session of such body, and in the presence of the officer having the custody thereof.’ ” (p. 28.)
The court said:
“In view of this positive language of the statute, the ballots should not always be excluded merely because they cannot be regarded as the best evidence, or as controlling evidence, in determining the result of the election.” (p. 28.)
The court further said:
“Section 113 of the election law provides that ‘the person desiring to contest such election shall, within thirty days after the person, whose election is contested, is declared elected, file with the clerk of the proper court a statement in writing, setting forth the points on which he will contest the election, which statement shall be verified by affidavit in the same manner as bills in chancery may be verified.’ . . . Now, one of the points on which the appellee relies in his statement or petition is that a correct count of the ballots would show his election; and that, in order to determine the contest, the ballots should be produced, and a recount of them should be made. In view of these allegations in the petition, we are unable to see why it was not proper to admit the ballots for what they were worth, to be considered in connection with other evidence produced. For the error in refusing to admit the ballots, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed. Reversed and remanded.” (p. 31.)
This case was followed in Talbott v. Thompson, 350 111. 86, 182 N. E. 787. To- a similar effect is Frum v. Learner, 101 Neb. 675, 164 N. W. 715; Looney v. County Election Board of Seminole County, 145 Okla. 25, 291 Pac. 554, 71 A. L. R. 420; People v. McClelland, 191 N. Y. 341, 84 N. E. 68; Browning v. Lovitt, 139 Ky. 480, 94 S. W. 661, and Gantt v. Brown, 238 Mo. 560,142 S. W. 422.
The majority of the court rely upon the fact that a Mrs. Brewer, one of the election officials, testified that no illegal vote was counted, no voter deprived of his right to vote and that so far as she knew the votes were properly called and tabulated. It was stipulated that the testimony of the other election officials would be the same as *948 that of Mrs. Brewer. This testimony would tend to support rather than impeach the correctness of the count. It is said that this testimony and stipulation are some evidence that the person who is alleged to have counted the 100 votes with only herself seeing them would have testified to the same effect had she been called. It is thought that this is some affirmative evidence to sustain the finding of the contest court. This would be of more weight to the writer if it appeared that the person who counted the 100 votes without anyone else seeing them was not available as a witness. The fact is that the record shows plainly that the stipulation was made only to save time.
Something is said about the fact that one elected to office should not be disturbed by baseless appeals. The answer is that where 57,000 votes were cast and the person declared elected had a majority of only 17, and one hundred votes were counted at a precinct with only one person seeing them, an effort to have the votes recounted so that all might see every ballot is hardly to be called baseless. If the complexities of modem life have rendered our election statute obselete I should much prefer to have the legislature amend it by providing a condition under which a recount may be had rather than have the court perform that act by judicial legislation. I think the judgment of the trial court should be reversed with directions to proceed to direct the contest court to recount the ballots in the ninth precinct of the third ward.
Thiele, J. (dissenting):
I do not concur in the disposition made of this case.
R. S. 25-1411, subdivision first, provides, as cause for contest, malconduct, fraud or corruption on the part of the judges, etc., and subdivision sixth, any error or mistake in counting or declaring the result. R. S. 25-1412 provides the matter contained in the first, fifth and sixth causes shall not be held sufficient to set aside the election unless such causes be found sufficient to change the result.
The matter was disposed of by the contest court on a demurrer to the evidence, so it must be assumed that the competent evidence offered is true. The matter was not tried de novo in the district court. On the counting board of the ninth precinct of the third ward was one Miss Fay. The testimony shows that Miss Fay announced the vote from about eighty ballots without the same being inspected by any other judge, and folded and strung the *949 ballots. Later, at a hearing in a mandamus action to compel a recount of this precinct and at the conclusion of the hearing, Miss Fay was heard to state in substance “We would be in an awful mess if the ninth of the third ward were counted.” One of the learned judges of the lower court, in his separate opinion, states that this evidence is hearsay and incompetent, a conclusion with which I cannot agree. The poll books of this particular precinct show that as pertains to the three democratic and three republican candidates forjudge of the district court, there was, at the greatest, a variance of six per cent in the votes for each as counted by the receiving and by the counting board. However, the result of the count as found by the receiving board was that Free received 281 votes or approximately 59 per cent and that Wood received 193 or approximately 41 per cent. The result, as announced by the counting board, was Free received 75 votes or approximately 36 per cent and that Wood received 131 votes or 64 per cent, a variance in the percentages of 23 per cent. Had the percentages remained constant with those of the district judges, Free would have received at least 50 per cent of the votes cast and counted by the counting board or 103, as against the 75 for which he was given credit, or a difference of 28, sufficient to have changed the result of the election. Of course, whether that result would be reached could only be determined by a recount of the ballots. In my opinion, the prima facie showing was sufficient, and the contester was entitled to have the sealed ballots of the precinct opened and recounted. Any other determination would logically lead to the conclusion that the finding of a contest court, ruling on undisputed evidence which leads to the conclusion that there has been either malconduct, fraud, corruption, error or mistake, is absolutely conclusive and subject to review only when fraud, oppression, corruption or arbitrary conduct on the part of the contest court can be shown.
The judgment should be reversed', and the cause remanded with instructions to the contest court to count the ballots from the particular precinct.