BRICKELL v. STATE ELECTION BOARD et al.

No. 34790. Aug. 23, 1950.

Rehearing Denied Aug. 26, 1950.

*221 P. 2d 785.*

Fletcher Riley, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Granville Scanland, Co. Atty., W. Ryan Russell, Rutherford H. Brett, all of Oklahoma City, for respondents.

ARNOLD, V.C.J. Pertinent to the issues tendered the facts are not in dispute. Petitioner, Brickell, and one Kessler were candidates for Representative, 5th Legislative District, Oklahoma County, in the July 25, 1950, run-off primary. According to the official returns to the State Election Board Kessler received 20 votes more than Brickell who sought a recount of the votes cast in fourteen designated precincts of said district under and by virtue of the authority of 26 O. S. 1941 §391 which was ordered by the State Election Board under mandate of this court.

The recount was begun and proceeded without interruption until nine boxes or the votes cast in nine of the designated precincts were counted. At this point, it appearing that Brickell was two votes ahead, he demanded that the recount cease; Kessler demanded that the recount proceed; it did proceed.

When the votes in the fourteen precincts asked to be recounted by contestant had been counted, contestee had a majority of nine votes. Prior to the time that the count of the fourteen boxes had been completed Kessler had filed an application asking that the remainder of the ballots cast in the additional precincts of the district be counted and had deposited $250 to defray the expense thereof. This was objected to by contestant as in the instance of the action of the Board in counting the ballots in the boxes nine to fourteen inclusive included in the original request of contestant. All the ballots cast in the legislative district were counted. According to the result thereof Kessler had sixteen more votes than Brickell. During the course of the

hearing or recount contestant offered to show that various irregularities, election law violations, double voting, etc., had occurred in Precinct 29 of Ward 3 which is partially in Oklahoma City and the outlying adjacent territory.

In this original action here contestant seeks to have the Oklahoma County Election Board enjoined from making a return to the State Election Board including the vote cast in Precinct 29 and seeks a writ requiring the State Election Board to issue him a certificate of nomination, or in the alternative to require the county election board to hear the evidence offered and make its decision in accordance therewith.

The right to maintain an action, here or elsewhere, to contest the right or title to a certificate of nomination of a political party has heretofore been settled by this court.

The remedies of the ancient writ of quo warranto have been preserved by territorial statute, our Constitution and our statutes since statehood, though the form thereof was abolished by statute. Section 458, Compiled Oklahoma Statutes, 1921, provided:

"The writ of quo warranto, and proceedings by information in the nature of quo warranto, are abolished, and the remedies heretofore obtainable in those forms may be had by civil action."

Section 459 thereof provided:

"Such action may be brought in the Supreme Court or in the district court in the following cases: . . . Sixth. For any other cause for which a remedy might have been heretofore obtained by writ of quo warranto, or information in the nature of quo warranto."

Section 6104, Comp. Okla. Stats. 1921, provided:

"The ballot shall be counted and return made in such primary election as by law provided for general elections: and primary elections shall in all respects conform to the laws governing general elections, except as herein otherwise provided, and all provi-sions of the laws governing general elections not in conflict with this chapter are hereby made applicable and put in force herewith."

Section 6123 thereof provided:

"All contests arising out of primary elections shall be settled and decided in the same manner as is now or may hereafter be by law provided for general elections. . . ."

In Jarman v. Mason et al., 102 Okla. 278, 229 P. 459, we said:

"A civil action authorized by sections 458 and 459, Comp. Stats. 1921, to obtain relief similar to that anciently obtainable by writ of quo warranto is, by section 6123, Comp. Stats. 1921, made the proper remedy to try the title of one to an already issued certificate of nomination by a political party for public office obtained in a primary election, provided that the relief is sought upon issues which could not have been adequately determined by a recount of ballots authorized by section 6107, Comp. Stats. 1921."

By construing those provisions of the Compiled Laws of 1921 together, the remedy in the nature of quo warranto was extended to a primary election contest or action to test title to nomination of a political party on grounds not provided by contest statutes. However, this court specifically pointed out in the case of Jarman v. Mason, supra:

"Neither the ancient writ of quo warranto nor information in the nature of a quo warranto was used to determine the right of one to the nomination of a political party for public office. In many states such right cannot be enforced even by such civil action in the nature of quo warranto proceedings. It is generally so held in the absence of specific legislation to the contrary. In fact, there exists at common law no right to contest in the courts the right to the nomination of a political party for public office."

In 1925, 12 O.S. 1941 §1531 was passed and became effective. It is provided therein:

"The writ of quo warranto, and proceedings by information in the nature

of quo warranto, are abolished and the remedies heretofore obtainable in those forms may be had by civil action; provided, that such cause of action may be instituted and maintained by the contestant for such office at any time after the issuance of the certificate of election by the state, county, township or city election boards, and before the expiration of thirty days after such official is inducted into office; . . . and provided further, that this Act shall not apply to primary election."

The succeeding section provides the grounds for the action in the nature of quo warranto.

In 1926, Dabney v. Hooker, 121 Okla. 193, 249 P. 381, was written. The facts and issues in that case, as stated by this court, were:

"At the primary election held August 3, 1926, Edwin Dabney and O. H. Searcy and others were candidates for the nomination of the Democratic party for the office of Attorney General. The State Election Board, upon a canvass of the returns, issued its certificate of nomination to Dabney. Thereupon Searcy instituted a civil action in the district court of Oklahoma county to try the title to such nomination. Dabney objected to the district court of Oklahoma county taking jurisdiction of said contest, on the ground that a contest of the result of a primary election is not a legal right in the absence of a statute specifically granting the right to such contest, and that there is no statute in this state authorizing or permitting a defeated candidate in a primary election to maintain a contest against another to whom a certificate of nomination has been issued. This objection was overruled. This original proceeding was then instituted in this court by Dabney, as plaintiff, filing his petition for a writ of prohibition to issue against Sam Hooker, judge of the district court of Oklahoma county, and O. H. Searcy, as defendants, to prohibit the said district court and judge thereof from proceeding in any manner in said cause wherein Searcy was seeking to contest said nomination."

In answer to the question posed by it, "Is there any authority, statutory or otherwise, which provides for a contest of this nature?" this court said "At common law there existed no right to contest in the courts the title to the nomination of a political party for public office," and cited the Jarman case, supra, and others.

The provision of section 1531, supra, wherein the cause of action in the nature of quo warranto was created, ". . . this act shall not apply to primary elections," was held valid in the Dabney case and had the effect of excluding the extension of the cause of action to primary elections and it was therein so held. In this connection this court said:

"It has also been argued that a defeated candidate, who makes charges of fraud and corruption, should at least have an opportunity to establish the same by proof. Be that as it may, there is no statutory law authorizing a contest of a primary election such as was instituted in the district court of Oklahoma county."

The proviso is still in effect and unchanged.

In 1930, in construing the 1929 run-off primary law (Looney v. County Election Board, 145 Okla. 25, 291 P. 554) this court reiterated the holding of the Dabney case, supra, that no cause of action existed at common law to test title to nomination at a primary election, and said:

"In Dabney v. Hooker, District Judge, supra, it was held that the statutory procedure for election contests theretofore existing was repealed by chapter 96, Session Laws of 1925, and that thereafter there was no statutory authority for contests for primary election in the district courts of Oklahoma. In announcing that decision this court called attention to the fact in clear and unambiguous language, and Mr. Justice Branson in a special concurring opinion called attention to the fact that the Legislature doubtless did not realize the farreaching consequence of its act when it provided for the repeal of the prior primary election contest procedure.

"It would seem that the language of this opinion was sufficiently clear to attract the attention of subsequent Legislatures and that had the rule announced in that case not met with the approval of subsequent Legislatures, it would have been corrected by the Legislature. No such correction has been made.

"This court is a judicial and not a legislative body. It is not its purpose to provide legislation. It has called the attention of the Legislature to this condition and nothing has been done to correct the same."

This court is committed to the rule that at common law there existed no right to contest the title to the nomination of a political party to public office in the courts and none now exists unless specially provided for by statute.

An election board has only such power and authority as is directly vested in it by the Legislature. The authority it may exercise and the duty it may be required to perform must appear in the legislative act it purports to act under. It must stay within its delegated authority and may not be forced to exercise power not granted by the Legislature. It is a privilege to seek a party's nomination for office and one who seeks office in this exclusive manner must do so under such hazards and handicaps as the Legislature sees fit to permit to burden him. The Legislature was not obliged to make any provision for a contest of a primary election. The provision made is exclusive. All authorities sustain these principles.

In section 391, supra, the Legislature said that a candidate for party nomination may file an application for "a recount of the ballots." If this is done in the time and manner prescribed the Legislature said "it shall be the duty of said election board to order said recount and proceed. with the same . . ." There is no other provision in the section which indicates the intention of the Legislature to enlarge the scope of the inquiry or contest. No mention is made in the section of a contest on any other ground than "recount of ballots." The fact that the recount provided applies to both the first and run-off primaries, with only three weeks intervening between the two, and all other circumstances indicate that the Legislature did not intend the scope of the inquiry to go beyond the actual recounting of the ballots in the boxes examined. The only right granted the candidate is to ask for and be accorded a recount and the only duty imposed upon the board is to recount the ballots determined by the district court and judge thereof to have been preserved as prescribed. That is what the election board did in this instance and that is .all it could do. It has no legislative authority to determine such questions as illegal conduct at the voting place, fraud, illegal voting, etc., and therefore did not err in refusing to entertain testimony thereon. To discard ballots reasonably capable of counting, for such reasons, would be inconsistent with its positive legislative mandate to count all the ballots found "to have been so preserved and are the identical ballots cast by the voters and have not been exposed to the reach of unauthorized persons so as to afford a reasonable opportunity of their having been changed or tampered with."

In that part of section 391 dealing with "Hearing and Recount," this sentence appears:

"At said hearing, the parties in interest may, without further pleading, offer such legal evidence in support of and in opposition to such contest as they may have to offer, and upon the completion of such hearing, the election board shall render its decision, and such decision shall be final and conclusive of all rights involved."

The petitioner argues this shows contemplation or intention on the part of the Legislature that the scope of inquiry or contest might far exceed just the recounting of the ballots.

Chapter 241, S. L. 1929, providing for recount in primary elections and being

the Act superseded by chapter 29, S. L. 1931, of which section 391, supra, is a part, contained provisions substantially similar as to hearings, notice of filing of petition for recount, and authorizing issuance of subpoenas, as does said section 391. In Looney v. County Election Board, supra, which was decided in 1930 and just six months before the passage of chapter 29, S. L. 1931, this court said:

"The 1929 Act provides for a hearing of some sort. The secretary of the county election board is authorized to issue subpoenas for witnesses and the sheriff and his salaried deputies to serve the same. No continuance shall be granted for any purpose and no appeal shall be taken therefrom. . . .

"What, then, is the nature and purpose of the hearing? It is limited by the terms of the act to an investigation of alleged errors in the tabulation of the returns and to alleged alterations in the tabulation of said returns. It necessarily follows that there must be an investigation and determination of whether or not the ballots 'had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with' before there can be a recount of the ballots."

The court added:

"Formerly that question was left to the determination of the courts, but since the Act of 1929 provides a complete procedure for primary election contests, this court must hold that that question must be determined by the county election board as a part of the hearing held prior to a recount of ballots."

The Act of 1931 (section 391, supra) provided that a judge of the district court sit with the election board and make the determination as to the integrity of the ballots above referred to, but did not extend the scope of such hearing, and we are of the opinion, and hold, that the hearing referred to in said section is confined to such matters as may be pertinent to a determination by the court of the proper preservation, etc., of the ballots, as a necessary precedent to the recount.

It is contended that the county election board erred in recounting the ballots included in the request of the petitioner, but purportedly waived by him because no provision of law is made therefor, and that it erred in recounting the ballots of the precincts of the district other than those requested by contestant because not requested by contestee in the manner required of contestant. We think a fair and reasonable interpretation of the provision of the statute:

". . . that if at any time before such recount is complete the contestee requests a recount of any of the ballots cast in said county, for which a recount has not been requested by said contestant, such recount shall be had immediately and without delay in the same manner as provided for upon the application of such contestant,"

to be that the contestee may at any time before the recount is complete request of the county election board and have a recount of any of the ballots cast in the county which has not then been had upon the application of contestant, upon determination by the court of the proper preservation, etc., of such ballots as is provided in the Act. The requirements of the Act with reference to the filing of original application for recount and giving notice thereof have no application to the quoted provision.

The performance of the duty imposed upon county election boards to recount ballots cast at a primary election is ministerial and may not be controlled by this or the district courts and said boards cannot under our superintending control, article 7, section 2, Constitution, be required to perform a duty not enjoined upon them by law.

Writ denied.

DAVISON, C.J., and CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur. O'NEAL, J., dissents.

O'NEAL, J. (dissenting). I am unable to agree to the majority opinion in the above matter in its entirety. I concur in the majority opinion insofar as it holds that the contestant, Brickell, was not entitled to stop or end the recount of the ballots in the fourteen precincts which he requested be recounted after nine precincts had been counted and contestant found himself two votes in the lead. I think the majority opinion correctly holds that the county election board should continue the recount until all the fourteen precincts challenged in the first instance have been recounted, and that because in the meantime contestee, Kessler, requested a recount in the remaining precincts of the district, he was entitled under the law to have all the remaining precincts recounted, upon compliance with the law with reference to deposit of costs therefor.

On the question of the right of contestant to present evidence before the county election board concerning his allegations of fraud and misconduct as to Precinct No. 29, in Ward 3 of Oklahoma City, I think the majority opinion ignores positive provisions of the statute which give contestant that right.

By section 6123, C.O.S. 1921, enacted in 1908, the right to contest the announced result of a primary election was provided. That is clearly shown by the decision of this court in Dabney v. Hooker, 121 Okla. 193, 249 P. 381, and especially by the concurring opinion of Mr. Justice Branson.

That right was taken away by the enactment of the Act of April 9, 1925, chapter 96, page 145, S. L. 1925. That also was decided in Dabney v. Hooker, supra. Therein the court said:

"... and as the law now stands (September 22, 1926) there is no provision of the statute of this state authorizing a plenary action for the contest of a primary election; such rights being purely political it could not exist except by some statute authorizing same."

In 1927, the Legislature enacted Senate Bill No. 324, chapter 63, S. L. of 1927, pages 82 to 86. Section 1 of said act provided:

"Neither the right to a certificate of party nomination, nor the right to certificate of election, shall be considered a property right to any extent whatsoever, unless and until such right to such certificate shall be determined and such certificate issued as hereinafter provided."

Section 2 provided that no certificate of party nomination or certificate of election should be issued by the county election board within a period of ten days following any primary, or general election, within and for said county, and no certificate of nomination, or certificate of election should be issued by the State Election Board until after the expiration of ten days from the date of such primary election as to any party nomination or election to state office, or any other office over which the State Election Board shall have jurisdiction.

Section 3 of said act provided:

"Any candidate for party nomination to county office may, at any time within ten days from the date of the primary or the general election, file with the County Election Board his or her challenge of the correctness of the announced results of said primary or general election by filing with the County Election Board, whose duty it is to canvass the returns in such race, a verified statement setting forth a state of facts which, if true, would change the result in his or her favor; or setting forth a state of facts showing that fraud has been committed in connection with such nomination or election, or both, which, if sustained, would affect the result of the election and change the same in favor of the contestant."

Sections 4, 5, and 6 of said act provided for notice and service of notice.

Section 7 provided:

"Except as hereinafter otherwise provided, the same procedure shall apply as to the candidates for District or State offices over which the State Election Board has jurisdiction and where provision is herein made for the filing of contest as to county offices, such contest as to State or District offices shall be filed with the Secretary of the State Election Board. And where provision is made for the constructive service on contestee upon the Secretary of the County Election Board, the same shall be upon the Secretary of the State Election Board, and such personal service shall be made by the Sheriff of the county of the residence of such contestee or contestees, and shall have the same force and effect as to State and District offices as herein provided for county offices."

Section 9 of the act provided that after the completion of service of notice, the county election board, or the State Election Board, as the case may be, shall set the contest for hearing on a day certain, and further provided:

". . . at which hearing, the parties in interest may, without further pleading, offer such legal evidence in support of and in opposition to such contest as they may have to offer, and upon the completion of such hearing, the Election Board shall render its decision, and such decision shall be final and conclusive of all rights involved, unless an appeal shall be taken as hereinafter provided."

Section 14 of the act provided that in contests for party nominations for district or state offices, or election thereto, where a recount of the votes in any county shall be required, or fraud shall be charged as to any given county, or counties, as to the election proceedings in any such county, or counties, the State Election Board shall have the right and authority to refer such contest to the county election board of each county involved *for the purpose of taking all testimony to be submitted and considered in connection with such contests as to such counties respectively, and make and submit*

*findings thereon, in due course, to the State Election Board.* (Emphasis mine.)

Section 15 provides:

"All hearings shall be public, and the Chairman and Secretary of such board respectively shall have the right and are hereby authorized and empowered to issue subpoenas for all witnesses to be used at such hearings, to administer oaths, and the clerk of such boards shall make and certify such proceedings and findings with the same force and effect as other records are certified by the custodian thereof."

It appears that under the 1927 act it was the policy of the law, expressly stated at least three times, that in such contests the parties have the right to offer or submit legal evidence to be considered in connection with such contests.

In 1929 the Legislature enacted House Bill No. 2, providing for a "run-off primary" election. Chapter 241, 1929 S. L., page 303, et seq.

Section 6 of that act provided that any candidate in any general primary election may challenge the announced and posted results thereof by filing with the county election board whose duty it is to canvass the election returns of and in said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations, if true, will show that petitioner for recount had a majority of all the votes cast for said nomination, or show that no candidate received such a majority, and that the petitioner had received the highest or next highest vote for said nomination.

Said section 6 also provided that any candidate in a run-off primary election may challenge the correctness of the announced and posted result thereof by filing with the proper county election board a similar statement. Said section provides for notice and hearing, etc., and further provides:

"The secretary of the county election board is hereby authorized to issue subpoenas for witnesses for such hearing, same to be immediately served or attempted to be served, by the sheriff and his salaried deputies in the manner provided by law for the service of subpoenas in civil actions in the district court, . . ."

That Act also provided, in effect, that the parties to a primary election, or run-off primary election contest, could produce evidence concerning the matters charged in said contest.

In 1931, the Legislature enacted Senate Bill No. 139, chapter 29, article 3, S. L. 1931, amending a number of sections of the statutes of Oklahoma relating to elections. Section 8 of chapter 29, S. L. 1931, amended section 1, chapter 63, S. L. 1927. That section became and now is section 391, Title 26, O. S. 1941. It is now in force and has been since its enactment in 1931. Said section provides that the right to a certificate of party nomination shall not be considered a property right to any extent whatever unless and until such right to such certificate shall be determined and such certificate issued as herein provided. It then provides that no certificate of party nomination shall be issued by the county election board before Thursday noon following any primary election, and no certificate of party nomination shall be issued by the State Election Board before Saturday noon next following such primary election. It then provides that:

"Any candidate for party nomination to a county office may, at any time before noon Thursday next following the primary election, file with the Secretary of the County Election Board his or her challenge of the correctness of the announced results of said primary election by filing with the Secretary of the County Election Board whose duty it is to canvass the returns in such a race, a written application requesting a recount of the ballots as to one or more precincts in such county, and where such application is accompanied by a cash deposit of not less than $250.00 for each county. It shall be the duty of said election board to order said recount and proceed with the same as herein provided."

Said section then, among other matters, provides for notice and service of notice upon the contestee or contestees, and further provides:

"Except as hereinafter otherwise provided, the same procedure shall apply as to the candidates for district or state offices over which the State Election Board has jurisdiction, and where provisions (sic) is herein made for the filing of contest as to county offices, such contest as to State or district offices shall be filed with the Secretary of the State Election Board before Saturday noon next following said primary election."

It then provides for constructive notice on the contestant, or contestee and further provides:

"Upon the completion of service as aforesaid, the county election board in case of a contest for county office, and the State Election Board, in case of a contest for State or district office, shall set such contest down for a day certain for hearing, same not to be more than twenty-four hours from the time of the completion of such service, the said hearing shall be held in the court room of the District Court and it shall be the duty of a judge of said court in and for said county, or in case of the disqualification or inability of such judge to act, of a judge of the District Court of some other district, assigned by the Chief Justice of the Supreme Court for that purpose, that (sic) attend, and in conjunction with said County Election Board, to conduct such recount. It shall be the duty of such District Court and of the judge thereof to hear evidence as to whether the ballots have been preserved in the manner and by the officers prescribed by the Statute, and as to whether they are the identical ballots cast by the voters, and that while in said custody they have not been exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with and the judgment of

said court upon such questions shall be final and conclusive."

It then provides:

"As to those ballots only that said court shall determine have been so preserved and are the identical ballots cast by the voters and have not been exposed to the reach of unauthorized persons so as to afford a reasonable opportunity of their having been changed or tampered with, the county election board, at said time, and without further notice shall proceed to recount such ballots."

And:

"*At said hearing, the parties in interest may, without further pleading, offer such legal evidence in support of and in opposition to such contest as they may have to offer,* and upon the completion of such hearing, the election board shall render its decision, and such decision shall be final and conclusive of all rights involved." (Emphasis mine.)

Later in said section it is provided:

"Provided, that in contest for party nomination for district or State offices, where a recount of votes in any county shall be required, the State Election Board shall have the right and authority to refer such contest to the county election board of such county involved, for the purpose of taking all testimony to be submitted and considered in connection with such contest as to such counties respectively and to make and submit findings thereon without delay to the State Election Board, . . ."

And:

"All hearings shall be public, and the chairman and secretary of such board respectively shall have the right and are hereby authorized and empowered to issue subpoenas for all witnesses to be used at such hearings, to administer oaths, and the Secretary of such boards shall make and certify such proceedings and findings with the same force and effect as other records are certified by the custodians thereof."

It is thus made clear that in such election contests the county election board, in conjunction with the district court, shall first hear evidence as to whether the ballots have been preserved in the manner and by the officers prescribed by the statute and as to whether they are the identical ballots cast by the voters, and that while in said custody they have not been exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been tampered with. It then provides that as to those ballots only that said court shall determine have been properly preserved and are the identical ballots cast by the voters, the county election board at such time and without further notice shall proceed to recount such ballots. It then says that:

"At said hearing the parties in interest may, without further pleading, offer such legal evidence in support of and in opposition to such contest as they may have to offer."

It is clear in my mind that this means that at the time of recount hearing or proceedings, the parties in interest may without further pleadings offer such legal evidence in support of or in opposition to such contest as they may have, and that this includes evidence of fraud either upon the part of any voter or voters, or on the part of the county election board or officials, which would tend to support the contest, or which would tend to oppose it. It was held in Coe v. State Election Board, 203 Okla. 356, 221 P. 2d 774, that said section 391 applies to both general and run-off primary elections.

As to fraud, the rule is stated in 18 Am. Jur., Elections, sec. 229, as follows:

"Although fraud upon the part of an individual voter vitiates his ballot, it does not invalidate the returns where the election officers were not parties to the improper acts, for in such a case the returns are accepted and purged of the illegal votes. Even in case of irregularity due to fraud of election officers or others it does not necessarily follow that the election is vitiated or that the votes from a precinct should be rejected, for to estab-

lish a fixed rule of this sort would result on occasion in the disfranchisement of numbers of honest voters. In accordance with the general rule already stated, however, the vote of an entire district will be rejected where fraud is practiced therein to such an extent that the true legal result of the election cannot reasonably be determined."

It is alleged in the petition of contestant that as to Precinct 29, Ward 3, which lies partly within and partly outside of the city of Oklahoma City, those voters residing within said precinct and outside of the city of Oklahoma City were entitled to vote for party nominations for justice of the peace in the district outside of said city; that the county election board, or whoever prepared the county ballots, printed on said ballots for voters in said precinct outside the city limits, not only the names of candidates for justice of the peace, but also the names of the candidates for representative of the State Legislature for the 5th District of Oklahoma county, which included the names of contestant and contestee; that their names were also printed on the legal ballots of state candidates so that the voters residing in said precinct outside the city of Oklahoma City were afforded the opportunity to vote twice for the democratic candidates for nomination for such representative. It is alleged that eight of said ballots were so used and voted by voters residing outside the city of Oklahoma City in the race for said nomination for representative. At the oral argument it was admitted that seven of such ballots were so used and voted as shown by the ballot stub books. It is asserted, however, that one ballot stub book was missing, but it is not clear whether that was a stub book of the outlying part of said precinct or a stub book for the regular ballots of the precinct as a whole. The printing and furnishing said spurious and unauthorized ballots, if true, was a legal fraud perpetrated, not by the individual voters but by the officer, or officers, who prepared the ballots. If this is true, the election inspector and judges participated in such fraud by distributing or issuing such spurious ballots to the voters residing in the outlying part of said precinct.

However, that of itself would not be sufficient to change the result of said election, since the recount showed that contestee received sixteen more votes than contestant. However, the evidence might show that the missing ballot stub book was for ballots issued to the voters in said outlying part of said precinct.

It is further alleged, under oath, that the contestee, Kessler, while said primary election was progressing, entered the polling place, or room, where said election was being held in said precinct No. 29, and there personally solicited votes, talked with voters, offered them cigars and assisted the firm and infirm voters in marking their ballots; that he remained in said room for some time and refused to leave until a policeman was called to remove him. This is denied, under oath, by contestee and cannot, of course, be proven except by introduction of evidence. If it be true, contestee is guilty of direct violation of the election laws. Whatever the combined effect of the issuance of the unauthorized ballots above referred to, and the unlawful conduct of contestee in entering the polling room and soliciting votes therein, if it be true that he did so, can only be determined by full hearing before the county election board and district court and on an opportunity being given to the parties to present such legal evidence as they may have concerning said matter. If upon a full hearing it be found by the county election board and district court that by reason of the unlawful distribution of duplicate ballots, and the ·conduct of the contestee, the true legal result of the election cannot be determined, then the vote of the entire precinct should be rejected under the rule stated under 18 Am. Jur., supra.

Contestant alleges that he appeared before the county election board and the district judge and requested that he be allowed to present evidence and, in fact, offered evidence to prove such facts, and in support of his allegation as to irregularities of the board and the alleged misconduct of the contestee, and that the board and the court denied his offer and request.

The majority opinion herein, as I view it, denies contestant the right to be heard and present his evidence before the proper tribunal set up by statute for the purpose, in violation of the statute itself. It entirely overlooks the statute which clearly gives contestant the right to present evidence before the county election board in support of his contest.

I think this court should issue an order requiring the county election board and district court to permit contestant to present evidence in support of his allegations and consider the same, and make such findings of fact as the evidence warrants, and the State Election Board should be prohibited from issuing the certificate of nomination until after such hearing has been afforded and the facts determined, or if this may not be properly done, then I think this court should refer this matter to a referee to hear the evidence and make findings of fact thereon, to the end that this court may itself determine the facts and enter its judgment accordingly.

For the reasons stated, I respectfully dissent.