1998 OK 58

**Robert H. MACY, et al., Plaintiff/Appellants,**

**v.**

**OKLAHOMA CITY SCHOOL DISTRICT NUMBER 89, and Ron Bogle, Frank Kellert, Wayne Dempsey, Thelma R. Parks, Tom Yeargain, Terri Silver, and Michael Carter, in their official capacities as members of the Board of Education of Oklahoma City School District No. 89, Defendants/Appellees.**

No. 89674.

Supreme Court of Oklahoma.

June 16, 1998.

Laurie W. Jones, Sherry L. Smith, Welch, Jones & Smith, P.C., Oklahoma City, for Defendants/Appellees.

Mark T. Koss, Mcnulty, Koss & Associates, Robert W. Cole, Bumgarner & Cole, Oklahoma City, for Plaintiffs/Appellants.

SUMMERS, Vice Chief Justice.

¶1   May residents of a former school district successfully bring a declaratory judgment action to invalidate an annexation election held thirty years earlier?  They may not.  We affirm the District Court's judgment in favor of the Defendant existing school district.

¶2   Plaintiffs are 317 residents in Oklahoma City School District I–89 residing in the former Arcadia School District I–5.  In 1996 the Plaintiffs filed suit in District Court seeking a declaratory judgment · that two elections in 1966 annexing their Arcadian district to the Oklahoma City district were void.  Oklahoma City School District I–89 defended, and argued that the elections were not void, but in any event, an action filed thirty years thereafter came too late to set aside the elections.

¶3   The Oklahoma City and Arcadia school districts were not adjacent in 1966.  Two annexation elections were held in that year, the results of which annexed Arcadia School District I–5 to Oklahoma City School District I–89.[1]

¶4   The first election was held in July 1966 to annex a quarter section of land in the Arcadia District.  On July 6th of that year the State Board of Education transferred a small portion of the Arcadia School District to the "transportation area" of the Oklahoma City School District.  On July 20th the Oklahoma County Superintendent of Schools signed an order declaring annexation.  The order stated that a petition for annexation had been filed on July 17, 1966, (a Sunday), that the election was held on July 19, 1966, that notice was given according to law, and that the annexation was approved by a vote of 8 to 2.  That part of Arcadia transferred to the Oklahoma City transportation area was purportedly the same portion subject to the July 19 annexation election.

¶5   Plaintiffs argue that the first election was void for two reasons: (1) improper notice, and (2) failure to satisfy the statutory requirement that annexation be based upon

---

1.  Defendant's brief reports that Arcadia was losing school patrons in 1966 due to its voluntary desegregation program, and because of its lower student population was in danger of losing its independent school district status.

the adjacency of the two districts. Plaintiffs argue that the notice of the election did not comply with the statute and that the voters did not have actual notice of the election. The relevant statutes governing notice are 70 O.S.Supp.1965 § 7–1 and 70 O.S.1961 § 4–16.[2] Defendant argues that the date in the order for the filing of the petition for annexation must have been a typographical error, being only two days before the election and being on a Sunday, a day on which the Superintendent's office was never open. Section 7–1 provides the procedure for an annexation election upon the filing of an annexation petition.

¶ 6   Then in August of 1966 a petition was circulated in Arcadia to annex the entire Arcadia school district to Oklahoma City. The petition was received on August 23 by the County Superintendent of Schools. The second election was held on September 3, 1966. A majority of the voters in the Arcadia district voted approval of the annexation. Plaintiffs challenge this election by arguing that the Arcadia district did not meet the statutory provisions for annexation to the Oklahoma City district. The statute is 70 O.S.Supp.1965 § 7–1.

(a) The territory comprising all or part of a school district may be annexed to an **adjacent** school district, or to a school district in the **same transportation area** authorized to furnish transportation, or to two (2) or more such districts, when approved at an annexation election called and conducted by the county superintendent of schools in pursuance of a petition for annexation signed by a majority of the school district electors in the territory proposed to be annexed, . . . (emphasis added).

Plaintiffs are correct that at the time the first election was held the Arcadia and Oklahoma City school districts were not adjacent to each other. Two school districts were situated between the Arcadia and Oklahoma City districts, those of Oakdale and Jones.

¶ 7   Plaintiffs thus argue that the first election did not involve adjacent districts, and the second election did not involve adjacent districts if the first election is of no effect. Plaintiffs also argue that no part of Arcadia was in a properly created transportation district at the time of the first annexation election.

¶ 8   Both sides moved for summary judgment, and the District Court granted judgment to the Oklahoma City School District. Plaintiffs appealed, which we have retained pursuant to Okla.Sup.Ct.R. 1.24. We deny the motion for oral argument. We need not detail all the evidentiary material in support of the respective Motions for Summary Judgment filed by both parties because we do not reach the merits of the challenge to either election. Our ruling is compelled by the procedural posture in which we find the case.

■   ¶ 9   The Oklahoma City school district argues that a declaratory judgment proceeding may not be used to challenge an election in place of the remedy provided by statute when there has been no showing that the statutory remedy was inadequate. We agree.

¶ 10   After an annexation election in 1966 the statute provided that the County Superintendent of Schools issue an order either declaring or denying annexation, based upon the election results. Within ten days after this order 25% of the school district electors who were eligible to vote at the election could

---

**2.**   70 O.S.Supp.1965 § 7.1(a) provides in part:

. . . Such election shall be held within fifteen (15) days after the county superintendent of schools receives such petition, at some public place in the school district in which the area affected is situated, between the hours of two (2) o'clock p.m., and six (6) o'clock p.m., and notice thereof shall be given by the county superintendent of schools in the same manner as special meetings of the school district electors of school districts; provided, that the county superintendent of schools shall not be required to call or hold an election for the purpose of annexing a part of a school district more than once during any twelve month period.

70 O.S.1961 § 4–16 provides in part:

Notice of the time, place and purpose of such annual or special meeting shall be given by the clerk of the board of education at least ten (10) days prior to the meeting by publication in one (1) issue of a newspaper of general circulation in the district or by posting written or printed notices of such meeting in five (5) public places in the district by the clerk of the board of education.

appeal the Superintendent's order to the district court. 70 O.S.Supp.1965 § 7–1. No one followed this statutory procedure in 1966.

¶ 11 Plaintiffs filed a petition in 1996 requesting a declaratory judgment pursuant to 12 O.S.1991 § 1651. A suit for declaratory judgment pursuant to § 1651 is neither strictly legal nor equitable, but assumes the nature of the controversy at issue. *Carpenter v. Carpenter*, 1982 OK 38, ¶ 17, 645 P.2d 476, 481; *Hoffman v. City of Stillwater*, 1969 OK 190, ¶ 18, 461 P.2d 944, 946. The present declaratory judgment proceeding is brought for the express purpose of attacking an election (actually, two elections), so the nature of the controversy is an election challenge.

¶ 12 Plaintiffs' petition alleges that they "are duly qualified citizens, taxpayers and or voters of Oklahoma City School District Number 89, (formerly Arcadia School District I–5)." No allegation is made relating these plaintiffs to the statutory 25% of the electors joining in an appeal challenging an annexation election, and, of course, the case was brought some thirty years after expiration of the ten day period. This case is obviously not prosecuted according to the statutorily provided procedure for an annexation election challenge.

¶ 13 A variety of procedures have been used to challenge elections: statutory relief, mandamus, quo warranto, injunction, and declaratory judgment. No exercise of judicial or quasi-judicial power by a state entity in an election controversy is beyond this Court's superintending jurisdiction to review by the appropriate extraordinary writ. *McKye v. State Election Bd. of State of Oklahoma*, 1995 OK 15, ¶ 5, 890 P.2d 954; *Stover v. Alfalfa County Election Bd.*, 1975 OK 6, ¶ 8, 530 P.2d 1020, 1022; *Boevers v. Election Bd. of Canadian County*, 1981 OK 138, ¶ 6, 640 P.2d 1333, 1335. We have also explained that this Court is empowered to issue mandamus to an election board for the purpose of correcting an arbitrary abuse of discretion or to compel the performance of a ministerial duty. *Box v. State Election Bd. of Okla. County*, 1974 OK 104, ¶¶ 16–18, 526 P.2d 936, 939; *Brown v. State Election Bd.*, 1962 OK 36, 369 P.2d 140, 152. However, the exercise of power to review elections, whether by this

Court or a district court, must be in accordance with the legal requirements for obtaining such review.

¶ 14 Generally, in assessing a plaintiff's standing in election controversies courts examine both the type of claim made and the interest of the party pressing that claim. When statutory relief is available we have required particular claims to be addressed by the particular statutory procedure provided by law for adjudication of that claim. See e.g. *Coleman v. Sequoyah County Election Bd.*, 1988 OK 96, ¶ 2, 762 P.2d 935, in which we said that inasmuch as a remedy for contesting the candidacy of a candidate was provided by 26 O.S.1981 § 5–118, a party could not use a petition for irregularities pursuant to 26 O.S.1981 § 8–120 as an alternative method. Similarly, in *Brickell v. State Election Bd.*, 203 Okla. 362, 221 P.2d 785, 789 (1950), we explained that a statutory hearing on a recount could not be expanded to include testimony on allegations of voting irregularities when no legislative authority existed for such expansion.

¶ 15 What sort of interest must a plaintiff have in order to be heard in a suit to invalidate an election? Where the creation of a school district is challenged in a proceeding in the nature of quo warranto the proper plaintiffs are the legal representatives of the state, i.e. the Attorney General or District Attorney (County Attorney). In *State ex rel. McFadyen v. Holtzclaw*, 151 Okla. 163, 2 P.2d 1022 (1931), such a proceeding was brought challenging the incorporation of a school district. We quoted with approval from the Supreme Court of Kansas, and explained that private plaintiffs had no standing to challenge the district's creation.

The state has provided its own officials, an Attorney General and a county attorney, to challenge the validity of a corporate or quasi corporate organizations in this state, like cities, counties, townships, and school districts; **and ordinarily it is no justiciable concern of private individuals that these public subdivisions and organizations of the state may have some infirmity in their organization.**

*State ex rel. McFadyen,* 2 P.2d at 1023, quoting, *Schur v. Rural High School District No. 1,* 112 Kan. 421, 210 P. 1105, 1106 (1922), (emphasis added).

Private individuals thus do not possess a legally cognizable interest to challenge the creation of a school district in a quo warranto proceeding.

¶ 16  This concept is also found in our opinions declining to give **equitable** relief to plaintiffs challenging a school district consolidation.  In *McGowen v. Board of Education of Union Graded School Dist. No. 25,* 188 Okla. 625, 112 P.2d 355 (1941), suit was brought by individuals seeking to enjoin the consolidation of two school districts.  The purpose of the proceeding was to avoid the effect of an election held in response to a call by the County Superintendent.  We said

> The trial court sustained a demurrer to the petition on the sole ground that the plaintiffs were without legal capacity to maintain the action; that such suit could be instituted and prosecuted only by the Attorney General or the County Attorney of McCurtain County.  This is the only error assigned on appeal.

> We are of the opinion and hold that the order sustaining the demurrer must be affirmed.  In *Dowell v. Board of Education,* 185 Okl. 342, 91 P.2d 771, this court passed upon a similar situation.  Under the authority of that decision it appears that the plaintiffs cannot maintain this action.  They have no voice in the affairs of the school district except in those matters designated by statutes.  A school district is a subordinate agency of the state.  The only agency authorized to object to the proceeding, authorized by the election, is

the State of Oklahoma.  *Dowell v. Board of Education, supra.*

*McGowen,* 112 P.2d at 355.

Thus, private individuals as residents have no right to equitable relief to void an election organizing a school district.

¶ 17  This Court has used equity to provide a remedy for the purpose of challenging an invalid election if there is no statutory provision allowing an election contest, and if the challenge involves civil or property rights, rather than political rights. *Walker v. Oak Cliff Volunteer Fire Protection Dist.,* 1990 OK 31, ¶ 14, 807 P.2d 762, 768.[3]  Plaintiffs in our case today do not seek relief based upon alleged injuries to their civil or property rights, nor, as alleged in *Walker,* an election procedure that denied notice of a right to vote on an issue that affected property rights without any statutory remedy of appeal.  Rather, their claim is solely that the elections did not follow proper procedure and that for this reason they must be held to be void.

¶ 18  In *School Dist. No. 37, Washita County v. Latimer,* 190 Okla. 620, 126 P.2d 280 (1942) an action was brought by a school district, its officers, and certain of its residents to enjoin a county superintendent from making an annexation order.  We said that:

> The Legislature may at will create, alter or abolish school districts without consulting the inhabitants thereof.  The people may be denied a voice in the matter, and denied the right of appeal. . . .  However, any attempt on the part of the Legislature to deny interested parties the right to a judicial determination of the question whether the provisions of the act have been complied with would constitute a denial of due process of law.  In event the Legislature

---

3.  We have defined political rights thus:
A political right is a right exercisable in the administration of government.  Political rights consist in the power to participate directly or indirectly in the establishment or management of government.
*State ex rel. Attorney General v. Huston,* 27 Okla. 606, 113 P. 190, 198 (1910), quotes omitted.  This court has stated on several occasions that a court of equity will not enforce a political right. *State ex rel. Robinett v. Jarrett,* 200 Okla. 387, 196 P.2d 849, 850 (1948).  *See State ex rel. Cameron*

*v. Jones,* 165 Okla. 193, 25 P.2d 648, 650 (1933), (we stated the rule with approval and collected opinions from other courts); *City Council of City of McAlester v. Milwee,* 31 Okla. 620, 122 P. 173 (1912), (same).  Political rights are distinguished from those rights that are protected by statutes creating judicial remedies for their enforcement, *State ex rel. Robinett v. Jarrett, supra,* (Riley, J., concurring specially), and from civil and property rights protected by equity when no statutory remedy exists, *Walker, supra.*

should fail to provide an adequate remedy in such case the parties could resort to injunction to test the validity of the order. But where an efficient and speedy remedy is provided, injunction will not lie.

*Id.* 126 P.2d at 282.

We then explained that the individuals did not possess a property right affected by the annexation.

> In *Dowell v. Board of Education*, 185 Okl. 342, 91 P.2d 771, 775, where a similar question was involved, the court said: "But the voters of the independent district are not divested of any property rights by the addition of territory to their school district or a change in such district. A school district is a subordinate agency of the State, and the Legislature can abolish them or change their boundaries without consulting the inhabitants. *School Dist. No. 17 v. Zediker*, 1896, 4 Okl. 599, 47 P. 482. The individuals have no property rights in them, and thus the failure to give the inhabitants of the independent district a voice in the matter or to provide for an appeal is not a fatal defect."

*School Dist. No. 37, Washita County,* 126 P.2d at 282.

¶ 19 Plaintiffs' challenge to the second election because it combined two non-contiguous school districts into one is one that could have been brought in 1966. For example, in *Independent School Dist. No. 66, Pottawatomie County v. Dependent School Dist. No. 62,* 1953 OK 208, 259 P.2d 826, 829, we said that when a school district was created consisting of two or more non-contiguous districts by an election, an appeal pursuant to statute could be filed in the district court, and that court had the power to invalidate the election. The non-contiguous nature of the annexation was readily ascertainable by those electors participating in that election, as it was in this one, and nothing would have prohibited them in either case from challenging the election on this ground.[4]

¶ 20 The other challenge to the second election is the claim that in July of 1966 the State Board of Education had improperly created a transportation district by adding a portion of the Arcadia School District to the Oklahoma City School District. Plaintiffs rely upon the minutes of the State Board to show that the transportation district was not created in accord with the rules of that Board. But the statutory appeal within ten days after the election provided a procedure for adjudicating claims of flaws in the election such as that.

¶ 21 This is not to say that the only procedure for challenging a school district annexation election in 1966 was by the statutory appeal. For example, a declaratory judgment procedure has been used by **competing school districts** to successfully challenge an annexation. *Jet–Nash School Dist. No. I–4 of Alfalfa County v. Cherokee School Dist. No. I–46 of Alfalfa County,* 1989 OK 92, 776 P.2d 553. We have also declined to limit one school district's remedy to challenge an adjacent district's patently void acts when such acts would usurp the right of the former district to proceed with an annexation according to statute. *Tryon Depend. School Dist. No. 125 v. Carrier,* 1970 OK 153, 474 P.2d 131, 134. But this case does not present a controversy where a school district has attempted to annex the territory of the former Arcadia district and then sought to justify its act by alleging the invalidity of the original annexation by the Oklahoma City School District.

¶ 22 Plaintiffs rely upon *Walker v. Oak Cliff Volunteer Fire Protection Dist., supra.* But it does not help them. The equitable remedy allowed in *Walker* was based upon the **complete absence** of a statutory procedure for a Fire Protection District election contest. 1990 OK 31, at ¶ 14, 807 P.2d at 768. We assayed the timing of the suit brought to invalidate the election (20 months after the election) and held that laches did not bar the electors. But the electors of this 1966 annexation election **were** provided with a statutory procedure for an election contest, and *Walker* is inapposite.

---

4. We have explained that an appeal to a district court is a plain, speedy, and efficient remedy in the nature of an original proceeding to test the validity of the order of the superintendent, and that there is nothing in the statute to restrict the court's judicial power to hear and determine every material issue. *School Dist. No. 37, Washita County,* 126 P.2d at 283.

¶ 23  Plaintiffs also rely upon *City of Maud v. Tulsa Rig, Reel & Mfg. Co.*, 165 Okla. 181, 25 P.2d 792 (1933). In *City of Maud* we said that a city ordinance annexing territory could be collaterally attacked when the ordinance was invalid on its face and the judicial proceeding was for the purpose of challenging a tax based upon that ordinance. Thus a collateral attack upon an annexation ordinance is allowed in certain circumstances. But the suit today does not challenge a tax based upon an annexation. Rather it is a challenge to the formation of the district itself, and as we stated previously, a private individual ordinarily has no justiciable concern relating to an infirmity in the organization of a district. *State ex rel. McFadyen, supra.*

¶ 24  We hold that when electors of a district possess a right to bring a statutory appeal for the purpose of challenging an annexation election, and then do not do so, they may not subsequently institute a declaratory judgment action for the sole purpose of invalidating the election upon grounds that could have been adjudicated by the statutory appeal.[5] Declaratory judgment cannot be used as a remedy to challenge an election in place of the remedy provided by statute when there has been no showing that the statutory remedy was inadequate. And the electors made no timely claim that the statutory procedure was somehow inadequate.

¶ 25  In sum, Plaintiffs who were electors at the time of the election had a remedy at law for challenging the election. Equity will not be used to create an election contest remedy in place of a statutory remedy where no showing has been made that the statutory remedy is inadequate to protect a legally cognizable right. Plaintiffs have requested improper relief in the form of a declaratory judgment that seeks to invalidate an election upon grounds that could have been raised by the statutory procedure for contesting the election.

¶ 26  We agree with Plaintiffs that in certain circumstances an annexation may be collaterally attacked. *City of Maud, supra.* However, we agree with Defendant that a collateral attack upon an annexation election must be based upon an interest possessed by the plaintiffs other than a mere impropriety in the formation of the district. *Id.* Whether any persons, Plaintiffs in this case or otherwise, actually possess such an interest and could bring a suit that would properly present such issue is a matter that is not before us.

¶ 27  The judgment of the District court in favor of Oklahoma City School District I–89 is affirmed.

¶ 28  KAUGER, C.J., and HARGRAVE, WATT, JJ., and GARRETT, GOODMAN, Special Judges, in lieu of HODGES and LAVENDER, JJ., each of whom having filed his disqualification, concur.

¶ 29  SIMMS and OPALA, JJ., concur in judgment.

¶ 30  ALMA WILSON, J., concurs in result.

OPALA, Justice, concurring in judgment.

¶ 1  The court today pronounces that a declaratory-judgment action will not lie to challenge the validity of two school district annexation elections when there has been no showing that the statutory remedy for waging such contests was inadequate.

---

5.  The record appears to identify the Plaintiffs as current residents of the former school district. No citation of authority should be necessary for the proposition that a person has no right to contest an election that the voter was not entitled to participate in. Plaintiffs must have been electors of the school district at the time of the annexation election to possess standing to bring an election contest proceeding challenging the formation of the district. See *Shaw v. Hunt*, 517 U.S. 899, 116 S.Ct. 1894, 1900, 135 L.Ed.2d 207 (1996), where the Court explained circumstances where a voter residing outside of a district had no standing to challenge gerrymandering of the district. Plaintiffs who were not electors of the district, either because they resided elsewhere, or had not reached majority, and thus did not possess a statutory right to contest the election—are not merely lacking a remedy—they do not possess a right to challenge the election in a contest proceeding. *Cf. Wagoner County Election Bd. v. Plunkett*, 1956 OK 329, 305 P.2d 525, 529–530, (Court explained that equity would not be used to correct the absence of a remedy when there was an absence of a right).

¶2 Although I concur in the court's judgment, I must recede from the analytical underpinnings of its pronouncement. The *short and simple answer* to this controversy is that the plaintiffs' *claim for de-annexation* of a school district, brought some thirty years after the district had acquired its present-day boundaries, *is barred by prescription.* The district's *continued* and *uninterrupted* control of the annexed area for more than fifteen years gives it a legally unassailable title to its current territorial integrity. In sum, the contest sought to be pressed is time-barred.[1]

## I

### THE ANATOMY OF LITIGATION

¶3 The Arcadia School District I–5 [Arcadia District] became incorporated in 1966 into the Oklahoma School District I–89 [District]. First to be annexed, by election held in July 1966, was a quarter section of land situated in the Arcadia District. The remainder of the territory now in contest here was annexed by an election held in September of that year. *Residents of the former (now defunct) Arcadia District* challenge in this lawsuit the validity of the two critical elections.

1. The terms of 60 O.S.1991 § 333 are:
   "*Occupancy for the period prescribed* by civil procedure, or any law of this state as sufficient to bar an action for the recovery of the property, *confers a title thereto,* denominated a *title by prescription,* which is sufficient against all." (Emphasis mine.)

2. For the terms of 60 O.S.1991 § 333, see *supra* note 1.

3. A "school district" is regarded as a *legal division of territory,* created by the state for educational purposes. The terms of 70 O.S.1991 § 1–108 provide:
   "A school district is defined as *any area or territory comprising a legal entity,* whose primary purpose is that of providing free school education, whose boundary lines are a matter of public record, and the area of which constitutes a complete tax unit." (Emphasis mine.)

4. 70 O.S.Supp.1997 §§ 7–101 et seq.

5. The terms of 12 O.S.1991 § 93 provide in pertinent part:
   "Actions for the recovery of real property, or for *the determination of any adverse right or interest* therein, can only be brought within the

## II

¶4 **THE ROMAN–LAW CONCEPT OF PRESCRIPTION—EMBODIED IN THE TEXT OF 60 O.S.1991 § 333[2]—CONFERS UPON THE DISTRICT UNASSAILABLE PRESCRIPTIVE RIGHTS IN THE ANNEXED ARCADIAN TERRITORY IN DISPUTE HERE**

### The District qua Territorial Entity

¶5 A school district is a territorial entity,[3] which embraces a defined geographical area that may be enlarged or diminished through consolidation or annexation of land area.[4] The lawfulness of the Arcadian territory's incorporation is challenged—some thirty years after that land area's annexation—for flaws in the two critical boundary-shaping elections. *In my view, the District is no longer required to justify the legitimate origin of its control over the annexed territory.* This is so because it has been *continuously* operating as a district *within the entire land area of which it is now constituted* for longer than the prescriptive period of fifteen years.[5] Its occupancy of the land area has been adverse, open (visible), exclusive and

periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter:
(1) An action for the recovery of real property sold on execution, or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed pursuant to partition proceedings, or other judicial sale, or an action for the recovery of real estate distributed under decree of district court in administration or probate proceedings, when brought ... within five (5) years after the date of the recording of the deed made in pursuance of the sale or proceeding, or within five (5) years after the date of the entry of the final judgment of partition in kind where no sale is had in the partition proceedings; or within five (5) years after the recording of the decree of distribution rendered by the district court in an administration or probate proceeding....
(2) An action for the recovery of real property sold by executors, administrators, or guardians, upon an order or judgment of a court directing such sale, brought ... within five (5) years after the date of recording of the deed made in pursuance of the sale.
(3) An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed,....

peaceable.[6] Moreover, even if the critical annexation elections are in fact *facially void*, as the plaintiffs' urge, an even shorter (five-year) prescriptive period might have been triggered.[7]

### Prescription

¶ 6 Lapse of time that brings about a *transfer of rights* from the true title holder to the adverse claimant comes to us from the Roman-law doctrine known as prescription.[8] Prescription provides a mode of *acquiring an interest* in the property of another through long-continued period of nonconsensual possessory dominion or nonpossessory use (or enjoyment).[9] Prescriptive occupancy (or use) must be *nec vi nec clam nec precario* [10] —peaceable, open (visible) and without the true titleholder's consent or permission. In Oklahoma jurisprudence the quoted Latin-language maxim of the common law, which characterizes the qualifying attributes of adverse holding, is often translated as "actual, open (visible), notorious, exclusive and continuous." [11] *The precise genre of possessory interest we are dealing with here is managerial control of government schools in a defined land area.*

### Prescription—A Foreign Legal Concept— Comes To Oklahoma's Legal System Partly Through The Common Law, Though Its Core Concept Is Derived From Explicit Legislative Adoption

¶ 7 Prescription came to Oklahoma law from two different sources. It was first applied to the *acquisition of incorporeal interests in land, such as easements,* as part of the state's common-law heritage.[12] But insofar as prescription is invocable for *acquisition of title by lapse of time in the property of another,* the concept entered our legal system through the enactment of 60 O.S.1991 § 333.[13] The outer reach of the doctrine is not restricted to contests over title to land. It stands extended—and this application is

---

(4) *An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years.*

\*   \*   \*   \*   \*   \*

(6) *Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding* upon which such deed or judgment is based *is void or voidable in whole or in* part, for any reason, jurisdictional or otherwise; ..." (Emphasis mine.)

6. *See discussion* of prescription and adverse possession in Part II *infra.*

7. A void conveyance will, in some instances, serve as a muniment of title. *See U.S. Through Farmers Home Admin. v. Hobbs,* 1996 OK 77, 921 P.2d 338, 343 (the court held that the terms of 12 O.S.1991 § 93(6), *supra* note 5, bar an attack on an adverse claimant's void (or voidable) deed (or judgment), brought by suit commenced after the lapse of the five-year period prescribed by § 93(1), (2) and (3). The shorter period runs in favor of persons in possession under a void tax deed.) *Morris v. Wells,* 1963 OK 113, 381 P.2d 882, 887–888.

8. Prescription is a term of Roman law with a telling etymology. It is a derivative of Latin *"praescriptio",* meaning an earlier writing. Opala, *Praescriptio Temporis and Its Relation to Prescriptive Easements in the Anglo–American Law,* 7 TULSA L.J. 107, 112 (1971). Prescription was a stranger to the ancient Anglo–Saxon law. Sherman, *Acquisitive Prescription—Its Existing World–Wide Uniformity,* 21 Yale L.J. 149 (1912). The precise time of its entry into post-Conquest England cannot be fixed with any degree of accuracy. The best estimate is that English judges began to apply it in the twelfth or thirteenth century. *Id.* at 268.

9. Prescription governs both possessory and nonpossessory interests in real as well as personal property. *Opala, supra* note 8 at 108–110.

10. *Opala, supra* note 8 at 115, 120, 124, 125 (citing Bracton, De Legibus Angliae 221, 222b (Woodbine ed.1932)); see also David V. Snyder, *Possession: A Brief For Louisiana's Rights of Succession to The Legacy of Roman Law,* 66 Tulane L.Rev. 1874–75 (1992) (citing The Institutes of Justinian, 4.15.4a).

11. For example, to acquire an easement by prescription, a claimant must show that the use or enjoyment was hostile, actual, open, notorious, exclusive, continuous, and for the full statutory period. *Willis v. Holley,* 1996 OK 107, 925 P.2d 539, 541; *Irion v. Nelson,* 207 Okl. 243, 249 P.2d 107, 109 (1952).

12. Oklahoma applies prescription to acquisition of incorporeal interests in land, such as easements, as part of the State's common-law tradition. *Winterringer v. Price,* 1961 OK 135, 370 P.2d 918, 922; *Irion, supra* note 11 at 109; *Telford v. Stettmund,* 205 Okl. 86, 235, P.2d 692, 694–95 (1951).

13. For the terms of 60 O.S.1991 § 333, see *supra* note 1.

founded on sound historical antecedents—to a variety of land-based rights that resemble common-law franchises.[14] Included in the latter class of interests are governmental entities charged with providing school services within a legally defined territory.[15]

### Adverse Possession Distinguished

¶ 8 Prescription is best understood by its comparison with the doctrine of adverse possession. While as a common-law doctrine adverse possession could be used only defensively[16]—to bar the true owner's recovery of land—prescription confers title on the adverse occupant and allows lapse of time to be used offensively.[17] When read in conjunction with the provisions of 60 O.S.1991 § 333, the terms of 12 O.S.1991 § 93[18] *not only* extinguish the true owner's remedy *but also* confer upon the adverse occupant title to the premises by prescription.[19] By force of § 333 the limitations in § 93(1) and (6) stand transmogrified into a *right-conferring time bar* on whose lapse title to the land (or territory) becomes vested in the adverse holder.

### The Prescriptive Period

¶ 9 The prescriptive period was initially known at common law as time immemorial—*i.e.*, the time of human memory.[20] The date of legal memory was later fixed as the year of Richard I's coronation in 1189.[21] To avoid the necessity of proving such long duration a

---

14. "Franchise", as used by Blackstone, has reference to a royal privilege (or branch of the king's prerogative subsisting in the hands of the subject). It must arise from the king's grant or be *held by prescription. State v. Fernandez*, 106 Fla. 779, 143 So. 638, 639 (1932); *Omaha & Council Bluffs St. Ry. Co. v. City of Omaha*, 114 Neb. 483, 208 N.W. 123, 125 (1926); *Unger v. Landlords' Management Corporation*, 114 N.J. Eq. 68, 168 A. 229, 230 (1933); *Greene Line Terminal Co. v. Martin*, 122 W.Va. 483, 10 S.E.2d 901, 903 (1940); *Inland Waterways Co. v. City of Louisville*, 227 Ky. 376, 13 S.W.2d 283, 285 (1929).

15. *See in this connection Harvey Aluminum v. School District No. 9, Wasco County*, 239 Or. 571, 399 P.2d 149 (1965), a declaratory judgment action to establish the boundary between two school districts. The dispute arose because the boundary lines between two school districts, established in 1916, were overlapping. Until the action was pressed, nearly fifty years later, neither of the overlapping boundary lines described in the county's records was treated as the boundary by the county officials or the school districts themselves. The court opined that the boundary "should be drawn along the line *relied upon for a long period of time by the two school districts and by other county agencies.*" (Emphasis supplied.) By analogy to boundary disputes between two states, the court invoked " 'a principle of public law, universally recognized, that long acquiescence in the possession of territory, and in the exercise of dominion and sovereignty over it, is conclusive of the nation's title and rightful authority.' " *Id.* at 575, 399 P.2d 149 (quoting from *State of Michigan v. State of Wisconsin*, 270 U.S. 295, 319, 46 S.Ct. 290, 298, 70 L.Ed. 595 (1926)). The court concluded that a similar principle is applicable to establish the boundary between *lesser governmental units such as school districts*.

16. As a common-law concept, unaided by 60 O.S.1991 § 333 (*supra* note 1), adverse possession would deprive the true title only of a remedy—the land's recovery by ejectment. Adverse possession is at common law but a *defense* against true title. It does not operate to transfer title to the adverse claimant. *Stolfa v. Gaines*, 140 Okl. 292, 283 P. 563, 568 (1930).

17. To establish title by prescription, a claimant must show that possession of the land was adverse, actual, open, visible, notorious, exclusive, continuous and for the statutory period. *Shanks v. Collins*, 1989 OK 115, 782 P.2d 1352, 1354; *Loris v. Patrick*, 1966 OK 79, 414 P.2d 249, 252. If occupancy of premises beyond one's true boundary line is actual, open, visible, notorious, exclusive, and continuous, it may be "adverse" although occupants may have been unaware, or under misapprehension, as to the true location of the line. *Leach v. West*, 1972 OK 162, 504 P.2d 1233, 1237–38; *Hammer v. Bell*, 1964 OK 57, 390 P.2d 492, 498. Title so acquired is a corporeal right (as distinguished from an incorporeal hereditament in land).

18. For the pertinent terms of 12 O.S.1991 § 93, see *supra* note 5.

19. *Stolfa, supra* note 16, 283 P. at 567–570 (the court recognized that the provisions of 60 O.S. 1991 § 333, *supra* note 1, which confer title by prescription upon one who has occupied land adversely for the required period, *abrogate the common law*).

20. The right claimed must have been enjoyed beyond the period of the memory of man. 7 HOLDSWORTH, A HISTORY OF ENGLISH COMMON LAW 347 (1926).

21. In *The King v. Breaux*, 29 Selden Society, 180, it was established that the time of human memory required for founding an immemorial user reached as far back as September 3, 1189, the

custom arose of allowing a presumption of a grant on proof of usage for a long term of years.[22] The time span for acquisition of a prescriptive title is in Oklahoma governed by statute.[23] The terms of 60 O.S.1991 § 333, which confer that title upon one who has occupied land adversely for the requisite period, abrogate the common law.[24]

¶ 10 The *District has been functioning* within the annexed territory *qua* school district for over fifteen years. Its *open (visible), adverse, notorious, exclusive and continuous "occupancy"* [25] of the annexed land area for the requisite period confers upon it title by prescription to the administrative integrity of the territory sought to be deannexed by the plaintiffs' lawsuit.[26] Even if the District's title was acquired through two flawed annexation elections, it has become impervious to challenge by lapse of time.

### III

### SUMMARY

¶ 11 Inasmuch as the District has been occupying for over fifteen years the annexed

area as a school district—continuously and *sans* interruption—in a manner that has been adverse, open (visible), notorious and exclusive, its territorial integrity is no longer assailable. Because the instant dispute presents a public-law controversy, this court may change the theory tendered by the parties at nisi prius and followed by the trial court.[27]

In sum, although I join in affirming the trial court's judgment, I recede from today's opinion. I would rest this court's pronouncement *solely on the operation of prescription* rather than on inappropriateness of the invoked declaratory-judgment remedy. The vice I find in the court's text is that it places a *needless* and *legislatively unwarranted* [28] restriction on the availability of judicial declaration for testing school-district boundaries drawn by facially void means.

date of Richard I's coronation. *Opala, supra* note 8 at 125.

**22.** Scallon v. Manhattan Ry. Co., 185 N.Y. 359, 363, 78 N.E. 284, 285 (1906).

**23.** As the notion of a fixed time for bringing an action was unknown to the common law, the power to extinguish a remedy by lapse of years is regarded as exclusively legislative. *Lake v. Lietch*, 1976 OK 45, 550 P.2d 935, 937. The only limitation of time developed by the common law (*sans* statutory aid) was its so-called "immemorial prescription." Not until the 17th century did Parliament begin passing legislation prescribing fixed time limits within which an action must be brought in order to prevent the remedy's extinguishment. *See Resolution Trust Corp. v. Greer*, 1995 OK 126, 911 P.2d 257, 263 n. 26; *Opala, supra* note 8 at 111–113, 124.

**24.** *Stolfa, supra* note 16 at 567–70 (when the bar of the statute becomes complete, a title by prescription arises in the adverse holder whose occupancy was adverse, actual, visible and continuous, regardless of how destitute that occupancy may have been of any color of title).

**25.** In this sense occupancy means exercise of governmental control within an affected land area over all institutions subject to the District's official management.

**26.** *Harvey, supra* note 15 at 151.

**27.** When resolving a public-law controversy, the reviewing court is generally free to grant corrective relief *upon any applicable legal theory dispositive of the case and supported by the record. Russell v. Board of County Com'rs*, 1997 OK 80, 952 P.2d 492, 497; *Jackson v. Oklahoma Memorial Hosp.*, 1995 OK 112, 909 P.2d 765, 768; *North Side State Bank v. Board of County Com'rs of Tulsa County*, 1994 OK 34, 894 P.2d 1046, 1050 n. 8; *Schulte Oil Co., Inc. v. Oklahoma Tax Com'n*, 1994 OK 103, 882 P.2d 65, 69 n. 8; *Strelecki v. Oklahoma Tax Com'n*, 1993 OK 122, 872 P.2d 910, 920 n. 66; *Simpson v. Dixon*, 1993 OK 71, 853 P.2d 176, 187 n. 55; *McNeely, Matter of*, 1987 OK 19, 734 P.2d 1294, 1296; *Reynolds v. Special Indem. Fund*, 1986 OK 64, 725 P.2d 1265, 1270; *Burdick v. Independent Sch. Dist. No. 52 of Oklahoma County*, 1985 OK 49, 702 P.2d 48, 54 n. 10; *McCracken v. City of Lawton*, 1982 OK 63, 648 P.2d 18, 21 n. 11; *Application of Goodwin*, 1979 OK 106, 597 P.2d 762, 764; *Special Indemnity Fund v. Reynolds*, 199 Okl. 570, 188 P.2d 841, 842 (1948).

**28.** Relief by judicial declaration of legal status is a statutory creature. *See* the terms of 12 O.S. 1991 § 1651. The pertinent provisions of § 1651 are:

"District courts may, in cases of actual controversy, determine rights, *status*, or other legal relations...." (Emphasis mine.)